#27338-a-GAS
**2015 S.D. 96**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES IRVING DALE,                                                   Petitioner and Appellant,

     v.

DARIN YOUNG, Warden,
South Dakota State Penitentiary                      Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

JEFF LARSON
Sioux Falls, South Dakota                      Attorney for petitioner and
                                                                       appellant.


MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General

and

PATRICK T. PARDY
Special Assistant Attorney General
Pierre, South Dakota                              Attorneys for respondent
                                                                   and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015

OPINION FILED **12/16/15**

#27338

SEVERSON, Justice

[¶1.] James Dale filed an application for a writ of habeas corpus alleging that his penitentiary sentences were miscalculated. The habeas court denied Dale's application. We affirm.

## Background

[¶2.] In 2001, Dale pleaded guilty to third-degree burglary and possession of burglary tools for his role in burglarizing the Watertown Municipal Golf Course. The circuit court sentenced Dale to two consecutive terms of incarceration: 10 years for burglary and 5 years for possession of burglary tools. The court entered separate judgments of conviction for each count. Dale was granted parole in 2007.[1]

[¶3.] After his release, Dale committed another burglary in Minnesota. He was convicted of second-degree burglary and possession of burglary tools. On May 31, 2012, the South Dakota Board of Pardons and Paroles (parole board) generated a parole violation report regarding the Minnesota burglary convictions. Consequently, Dale was re-incarcerated in South Dakota for violating his parole.

[¶4.] Dale filed an application for a writ of habeas corpus. He maintained that, under SDCL 24-15A-19, his separate judgments of conviction resulted in separate sentences. Had his sentences been calculated separately, Dale claimed he would have been "paroled to" his 5-year consecutive sentence after reaching his

---

1. Dale had more than 3 prior felony convictions for the purpose of calculating his initial parole date pursuant to SDCL 24-15A-32.

initial parole date on his 10-year sentence.  Using his method of calculation,[2] Dale

determined that he served the entirety of his consecutive sentences on September 2,

2011, and was no longer on parole when the parole board generated his violation

report on May 31, 2012.  The circuit court denied Dale's application for a writ of

habeas corpus but granted a certificate of probable cause to appeal.

### Standard of Review

[¶5.]        "Questions of law concerning statutory construction are reviewed de

novo." *In re West W. River Elec. Ass'n, Inc.*, 2004 S.D. 11, ¶ 14, 675 N.W.2d 222, 226

(citing *Goetz v. State*, 2001 S.D. 138, ¶ 8, 636 N.W.2d 675, 678).  No deference is

given to the legal conclusions of the parole board or the circuit court.  *See id.*

(quoting *In re Nw. Pub. Serv. Co.*, 1997 S.D. 35, ¶ 13, 560 N.W.2d 925, 927).

### Analysis

[¶6.]        "Statutory construction is an exercise to determine legislative intent."

*W. River Elec.*, 2004 S.D. 11, ¶ 15, 675 N.W.2d at 226.  "[T]he language expressed in

the statute is the paramount consideration" and "if the words and phrases in the

statute have plain meaning and effect, we should simply declare their meaning and

not resort to statutory construction." *Id.* (quoting *Goetz*, 2001 S.D. 138, ¶ 8, 636

N.W.2d at 678).  When statutory construction is required "statutes must be

construed according to their intent, [and] the intent must be determined from the

---

2.    Under Dale's logic, he commenced his 10-year sentence on September 2, 2001,
      and after serving 40% of his time on that sentence on September 2, 2005, he
      "paroled to" his consecutive 5-year sentence.  Once he served the entirety of
      his 5-year sentence on September 2, 2010, Dale reverted back to his 10-year
      sentence which he served between September 2, 2001 and September 2, 2011.

statute as a whole, as well as enactments relating to the same subject."

*Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611 (quoting *Moss*

*v. Guttormson*, 1996 S.D. 76, ¶ 10, 551 N.W.2d 14, 17). "[I]n construing statutes

together it is presumed that the legislature did not intend an absurd or

unreasonable result." *Id.*

[¶7.]     The statute in question, SDCL 24-15A-19, provides in relevant part:

> In the determination of an inmate's initial parole date, two or
> more convictions arising from the same transaction, for which
> the sentences are made to run consecutively, shall be considered
> as one conviction. Two or more sentences arising from different
> transactions for which the sentences are made to run
> consecutively shall be considered as separate convictions. For a
> person receiving two or more sentences which are made to run
> consecutively, time to serve to initial parole shall be calculated
> individually for each sentence then added to determine actual
> first parole date.

[¶8.]     In support of his position, Dale points to the distinction in SDCL 24-

15A-19 between "convictions arising from the same transaction" and separate

convictions "arising from different transactions." Dale argues that in order to give

effect to this distinction, separate judgments of conviction that arise from different

transactions must result in separate sentences. The State, on the other hand,

argues that the distinction in SDCL 24-15A-19 is given effect when SDCL 24-15A-

19 is read together with SDCL 24-15A-32. According to the State, the distinction

provides a method for determining whether consecutive sentences should be treated

as one or more convictions when applying the initial parole grid contained in SDCL

24-15A-32.

[¶9.]     We agree with the State. SDCL 24-15A-19 and 24-15A-32 "are in the same chapter, they relate to the same thing, and they have the same purpose or object." *See Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 16, 709 N.W.2d 824, 831. Both statutes were enacted at the same time, in the same bill entitled, "An Act to eliminate good time and establish a new parole system for inmates of the adult prison system." 1996 S.D. Sess. Laws ch. 158, §§ 18, 31. The statutes were later amended at the same time, in the same bill entitled, "An Act to revise certain provisions of parole eligibility." 2007 S.D. Sess. Laws ch. 153, §§ 1, 2.

[¶10.]     In *State v. Sieler*, this Court construed the predecessor statutes to SDCL 24-15A-19 and 24-15A-32, under the "old system" of parole,[3] in the same way. 1996 S.D. 114, ¶ 9, 554 N.W.2d 477, 480. Calculating the time Sieler had to serve until he was eligible for parole, the Court read SDCL 24-15-7 together with SDCL 24-15-5. *Id.* SDCL 24-15-7 provides:

> In the determination of an inmate's eligibility for consideration for parole, two or more convictions arising from the same transaction, for which the sentences are made to run consecutively, shall be considered as one conviction. Two or more sentences arising from different transactions for which the sentences are made to run consecutively shall be considered as separate convictions. In determining the eligibility date for a person receiving two or more sentences which are made to run consecutively, the sentences shall be added together and the total number of convictions shall then determine the total

---

3.     The "old system" for calculating parole applies to state prison inmates who were convicted and sentenced for a crime committed before July 1, 1996. *Santema v. S.D. Bd. of Pardons and Paroles*, 2007 S.D. 57, ¶ 5, 735 N.W.2d 904, 905. The "new system" for calculating parole applies to those inmates who were convicted and sentenced for a crime committed on or after July 1, 1996. *Id.*

amount of time to be served before becoming eligible for consideration for parole subject to the provisions of § 24-15-5.

SDCL 24-15-5 is comparable to the initial parole grid contained in SDCL 24-15A-32. While SDCL 24-15A-19 does not specifically reference application of the initial parole grid as its predecessor statute did, we find it compelling that the language in SDCL 24-15-7 is nearly identical to the language in SDCL 24-15A-19, that SDCL 24-15A-19 and SDCL 24-15A-32 were enacted in the same comprehensive bill meant to replace the "old system" of parole, and that this Court has previously read SDCL 24-15-7 and 24-15-5 together.

[¶11.] Dale's position also conflicts with the concept of consecutive sentencing. "Consecutive sentences" mean "[t]wo or more sentences of jail time to be served in sequence." *Black's Law Dictionary* 1393-94 (8th ed. 2007). Under Dale's theory, he would have completely served his consecutive 10-year and 5-year sentences in only 10 years. However, when SDCL 24-15A-19 and 24-15A-32 are construed together, it does not produce an "absurd or unreasonable result." *See Martinmaas*, 2000 S.D. 85, ¶ 49, 612 N.W.2d at 611. The first two sentences in SDCL 24-15A-19 provide a method of determining whether consecutive sentences should be treated as one or more convictions when applying the initial parole grid contained in SDCL 24-15A-32. The third sentence of SDCL 24-15A-19 provides a method of aggregating the time that must be served on each consecutive sentence

before an inmate reaches their initial parole date.[4]  This construction of SDCL 24-15A-19 leaves Dale's 10-year and 5-year consecutive sentences intact.

[¶12.]        Dale's undisputed sentence commencement date was September 2, 2001.  The determination of the number of convictions in SDCL 24-15A-19 is inapplicable to Dale because he already had more than 3 prior felony convictions.  Applying the initial parole grid in SDCL 24-15A-32, Dale had to serve 40% on both of his sentences before reaching initial parole eligibility.  Dale served 40% of his 10-year sentence on September 2, 2005, and 40% of his consecutive 5-year sentence on September 2, 2007.  Dale was granted parole from the penitentiary in 2007.  However, because Dale had consecutive 10-year and 5-year sentences, his aggregated, sequential penitentiary term will not expire until September 2, 2016.  Dale was still under parole supervision on May 31, 2012, when the parole board generated his violation report.  *See* SDCL 24-15A-6 ("Each inmate shall be under the jurisdiction of the department, either incarcerated or under parole release or a combination, for the entire term of the inmate's total sentence length . . . .").  We affirm.

[¶13.]        GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.

---

4.      Dale poses a scenario where, after he was granted parole in 2007, he would be brought back to the penitentiary in 2011 to begin serving his 5-year consecutive sentence.  The aggregation of time to serve on both consecutive sentences before reaching initial parole prevents this anomaly from occurring.