#27345-rev&rem-JMK
**2016 S.D. 76**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

KEVIN L. HUGHBANKS,                                      Petitioner and Appellant,

v.

BOB DOOLEY, Warden,
South Dakota State Penitentiary,                         Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STUART L. TIEDE
Retired Judge

* * * *

DAVID A. STUART of
Peterson, Stuart, Rumpca &
Rasmussen, Prof. LLC
Beresford, South Dakota                          Attorneys for petitioner
                                                 and appellant.


MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                             Attorneys for respondent
                                                 and appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 18, 2016

OPINION FILED **10/26/2016**

KERN, Justice

[¶1.]        Kevin Hughbanks appealed a summary judgment denying his petition for habeas corpus relief from his convictions for two counts of possession of child pornography and as a habitual offender.  Hughbanks's attorney filed his brief as a "*Korth* brief" alleging a lack of arguably meritorious issues for appeal.  *See State v. Korth*, 2002 S.D. 101, 650 N.W.2d 528.  Upon consideration of the case, we identified two arguably meritorious issues for appeal and directed supplemental briefing on those issues.  *See id.* ¶ 16 n.6, 650 N.W.2d at 535 n.6.  After completion of supplemental briefing, we again considered the case.  We reverse and remand.

## Facts and Procedural History

### *Conviction*

[¶2.]        On March 20, 2007, Hughbanks pleaded guilty in Lincoln County to two counts of possession of child pornography and admitted the Part II Information alleging he was a habitual offender.  He was sentenced on June 19, 2007, to ten years in the penitentiary on the first count and to a consecutive ten years on the second count with the latter sentence suspended.  A written judgment was filed on June 25, 2007.  Hughbanks did not directly appeal his conviction and it became final on July 26, 2007.

### *Habeas in Circuit Court*

[¶3.]        Hughbanks filed his only petition for a writ of habeas corpus on April 2, 2014, nearly seven years after his conviction became final.  He alleged multiple claims of ineffective assistance of counsel and a *Miranda* violation.  The court appointed counsel and issued a provisional writ of habeas corpus requiring a return.

The State filed its return on April 24, 2014, raising a defense under the two-year statute of limitations for habeas corpus actions set forth in SDCL 21-27-3.3.[1] This statute, effective July 1, 2012, replaced a prior statute that generally permitted a habeas action to be "filed at any time[.]" *See* 2012 S.D. Sess. Laws ch. 118, §§ 1 & 3. On May 21, the State filed a motion for summary judgment along with a statement of undisputed facts in support of its statute of limitations defense. The return, motion, and statement asserted that the petition was time barred under SDCL 21-27-3.3(1) because Hughbanks filed his petition more than two years after his conviction was final in 2007. Further the State argued that none of the exceptions

---

1. SDCL 21-27-3.3 provides:

> A two-year statute of limitation applies to all applications for relief under this chapter. This limitation period shall run from the latest of:
>
> (1) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) The date on which the impediment to filing an application created by state action in violation of the constitution or laws of the United States or of this state is removed, if such impediment prevented the applicant from filing;
>
> (3) The date on which the constitutional right asserted in the application was initially recognized by the Supreme Court of the United States or the Supreme Court of this state if the right has both been newly recognized and is retroactively applicable to cases on collateral review; or
>
> (4) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

provided for by subdivisions (2) through (4) of SDCL 21-27-3.3 applied so as to permit Hughbanks's petition. Hughbanks countered with his own statement of undisputed material facts asserting that he did not discover the factual predicates for his claims until December 2013 and, therefore, his petition was timely under SDCL 21-27-3.3(4).

[¶4.] A hearing was held on July 8, 2014. Hughbanks testified[2] that he lacked access to legal counsel and legal materials, which deprived him of the ability to appreciate the legal significance of the predicate facts for his habeas claims until December 2013. Therefore, Hughbanks argued that his habeas petition was timely under SDCL 21-27-3.3(4). The habeas court rejected Hughbanks's claims in a memorandum decision filed on August 26, 2014, and an amended decision filed October 30, 2014. The court reasoned that all of the factual predicates for Hughbanks's claims were known to him no later than 2010. Further, the court found that Hughbanks had adequate access to counsel and legal materials to appreciate the legal significance of those facts before that time. Accordingly, the court filed an amended judgment and order on November 4, 2014, granting the State's motion for summary judgment, quashing the provisional writ of habeas corpus and dismissing Hughbanks's petition with prejudice.

### Initial Habeas Appeal

[¶5.] On January 8, 2015, the habeas court granted Hughbanks's motion for a certificate of probable cause to appeal the denial of his claim under SDCL 21-27-

---

2. Although the hearing was on a motion for summary judgment, the habeas court permitted Hughbanks to testify on the motion.

3.3(4). Hughbanks filed a notice of appeal to this Court. His counsel later filed Hughbanks's brief as a *Korth* brief claiming a lack of arguably meritorious issues for appeal. Consistent with *Korth*, counsel then briefed the issues requested by Hughbanks, including the issue on which the certificate of probable cause was granted. But counsel also raised a new claim, arguing that it was error to retroactively apply the two-year statute of limitations set forth in SDCL 21-27-3.3, which took effect July 1, 2012, to a habeas petition arising from Hughbanks's 2007 conviction.

[¶6.] In its response, the State agreed with certain aspects of Hughbanks's retroactivity argument. In view of the State's position, this Court directed supplemental briefing on the following issues:

> 1) Whether the habeas court erred in retroactively applying SDCL 21-27-3.3 to Hughbanks's action. *See, e.g., Eagleman v. Diocese of Rapid City*, 2015 S.D. 22, 862 N.W.2d 839.

> 2) Whether in retroactively applying SDCL 21-27-3.3 to Hughbanks's action the habeas court had authority to delay commencement of the two-year limitations period until July 1, 2012, the effective date of the statute.

Upon completion of the supplemental briefing, we now consider the case.

## ANALYSIS

### Issue 1

[¶7.] **Whether the habeas court erred in retroactively applying SDCL 21-27-3.3 to Hughbanks's action.**

[¶8.] Hughbanks argues that the habeas court erred in retroactively applying the statute of limitations in SDCL 21-27-3.3, passed in 2012, to his habeas

petition because his conviction became final in 2007. Application of SDCL 21-27-3.3(1) immediately rendered any habeas action commenced by Hughbanks after 2009 untimely unless one of the exceptions provided for in subdivisions (2) through (4) of the statute applied. None of the exceptions applied to Hughbanks or applied in a manner beneficial to him. He therefore contends that the court should have delayed commencement of the two-year limitations period until July 1, 2012, the effective date of SDCL 21-27-3.3, giving him time to file his habeas action. If allowed, this would make his habeas petition, filed in April 2014, timely. The State agrees with Hughbanks's argument, citing its concern that retroactive application of the statute would otherwise cut off Hughbanks's previously viable habeas claims in violation of due process.

[¶9.] There is support for the parties' position. As explained in 54 C.J.S. *Limitations of Actions* § 16 (2016):

> When . . . a limitations period is statutorily shortened or created where none existed before, federal due process requires that potential litigants be afforded a reasonable time for the commencement of an action before the bar takes effect. Thus, the legislature may shorten a limitations period and apply it retroactively, provided that a reasonable opportunity is given to exercise a remedy which would otherwise be materially affected by a new statute of limitations. If a claimant does not file within such reasonable time, the claim is barred. What is a reasonable time is to be determined by the legislature, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.

*See also Kotval v. Gridley*, 698 F.2d 344, 347 n.5 (8th Cir. 1983) (noting that "retroactive application [of an amendment shortening a limitations period] is constitutional so long as a plaintiff is not suddenly cut off from bringing an action,

but is given a reasonable opportunity after the effective date of the statute to bring suit before his claim is absolutely barred by the new enactment").

[¶10.]       SDCL 21-27-3.3 is patterned after the statute of limitations for federal habeas corpus actions.  *Compare* SDCL 21-27-3.3, *with* 28 U.S.C. § 2244(d)(1) (setting forth the statute of limitations for a federal habeas corpus action for a person in custody pursuant to a judgment of a state court).  Because of due process concerns such as those discussed above, federal courts have interpreted the federal habeas statute of limitations as permitting an additional one-year period from the effective date of the statute for applicants to bring claims that would have otherwise been cut off by the statute when it took effect.  As explained by the Eighth Circuit Court of Appeals:

> Prior to enactment of the AEDPA,[3] federal prisoners could collaterally attack their convictions . . . "at any time."  The AEDPA changed that right overnight, limiting the time period for filing § 2255 motions to one year from various triggering events.  Federal prisoners whose convictions were final, and to whom none of the other triggering events applied, were suddenly without recourse.  We recently joined the other circuits that have addressed this question in holding that a one-year grace period provides a reasonable time period to avoid the unjust result that would follow the application of the AEDPA's one-year time limit on preexisting causes of action.

*Moore*, 173 F.3d at 1134-35 (citations omitted) (footnote added).  The grace period or additional period for bringing claims discussed in *Moore* has been recognized by the

---

3.       "AEDPA" stands for "the Antiterrorism and Effective Death Penalty Act of 1996," which revised the federal habeas statutes of limitation.  *Moore v. United States*, 173 F.3d 1131, 1133 (8th Cir. 1999).

United States Supreme Court. *See Wood v. Milyard*, __ U.S. __, __, 132 S. Ct. 1826, 1831, 182 L. Ed. 2d 733 (2012) (noting that, "[f]or a prisoner whose judgment became final before AEDPA was enacted, the one-year limitations period runs from the AEDPA's effective date: April 24, 1996").

[¶11.]     Relying on federal authorities such as those above, both Hughbanks and the State urge this Court to recognize an additional two-year period[4] from the 2012 effective date of SDCL 21-27-3.3 in order to give habeas petitioners who would otherwise be cut off by the new statute a reasonable time to file their claims. Both sides agree that recognition of such a period would make Hughbanks's 2014 habeas petition timely, requiring a reversal and remand of the summary judgment against him.

[¶12.]     Ordinarily this Court does not apply a new statute of limitations retroactively to pending litigation absent an expression of legislative intent for such application. *See Eagleman*, 2015 S.D. 22, ¶ 16, 862 N.W.2d at 846 (noting that the "Legislature did not express an intent" that an amended statute of limitations should apply retroactively "to pending litigation" and deeming it "unsound to apply" the statute "to abruptly terminate plaintiffs' pending suits").[5] In fact this Court has

---

4.     The additional two-year period proposed by Hughbanks and the State corresponds with the two-year statute of limitations in SDCL 21-27-3.3 just as the additional one-year period recognized by the federal courts corresponds with the one-year statute of limitations for federal habeas corpus actions.

5.     *See Stratmeyer v. Stratmeyer*, 1997 S.D. 97, ¶¶ 14-17, 567 N.W.2d 220, 223-24 (applying the statute of limitations against civil actions for childhood sexual abuse retroactively based upon expressions of legislative intent in the enactment that it should be so applied); *Koenig v. Lambert*, 527 N.W.2d 903,

(continued . . .)

previously declined to retroactively apply an amended statute of limitations/repose to actions commenced *before the effective date* of the amendment. *Id.* ¶ 15, 862 N.W.2d at 846 (noting that this Court has "never held that a newly enacted limitations period applies retroactively to a pending lawsuit").

[¶13.] Nonetheless, this case does not concern *pending* litigation. Hughbanks commenced his action after the effective date of SDCL 21-27-3.3. Therefore, the ordinary prohibition against retroactive application of a new statute of limitations to pending litigation does not apply here. But as the Tenth Circuit Court of Appeals has noted, applying a shortened limitations period retroactively in a habeas action "could mean that a prisoner whose conviction became final more than a year before the AEDPA went into effect would have no avenue to bring a habeas petition because his petition would always be out of time under the new language." *Hoggro v. Boone,* 150 F.3d 1223, 1225 (10th Cir. 1998), In *Hoggro,* a federal habeas petitioner commenced his action over a year after the effective date of the AEDPA, which shortened the limitations period for such actions to a year after the conviction became final. In view of the problems posed by retroactive application, the Tenth Circuit joined other circuits holding "that for prisoners whose convictions became

---

(. . . continued)
904 (S.D. 1995) (citing SDCL 2-14-21 in holding that a statute of limitations should not be applied retroactively absent the "expression of such an intention by the South Dakota Legislature"), *overruled on other grounds by Stratmeyer,* 1997 S.D. 97, ¶ 21, 567 N.W.2d at 224.

final before April 24, 1996,[6] the one-year statute of limitation does not begin to run until April 24, 1996." *Id.*[7]

[¶14.] Similarly, in *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999), a petitioner seeking to vacate his sentence filed his petition and amendments approximately a year after the effective date of the AEDPA. The AEDPA also changed the limitations period for these petitions to a year after the conviction becoming final. *Id.* at 456. In reviewing the timeliness of the petition and amendments, the Eighth Circuit also joined "the majority of circuits in holding that [the statute's] one-year time limit did not begin to run prior to April 24, 1996." *Id.* In *Moore*, the Eighth Circuit relied in part on *Craycraft* in referring to "the one-year grace period" for applying "the AEDPA's one-year time limit [to] preexisting causes of action." 173 F.3d at 1135 (citing *Paige v. United States*, 171 F.3d 559, 560-61 (8th Cir. 1999); *Craycraft*, 167 F.3d at 456).

[¶15.] These authorities clarify that the additional one-year period recognized by the federal courts for commencing actions under the AEDPA resulted from judicial interpretations of how to apply the new statute of limitations in the act to

---

6. The AEDPA's effective date is April 24, 1996. *See Hoggro,* 150 F.3d at 1226.

7. The Tenth Circuit Court of Appeals cited *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998)*, Calderon v. U. S. Dist. Court for the Cent. Dist. of Cal.,* 128 F.3d 1283, 1287 (9th Cir.1997)*, overruled on other grounds,* 163 F.3d 530, 539 (9th Cir. 1998), and *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). *See also United States v. Simmonds,* 111 F.3d 737, 744-46 (10th Cir.1997) (applying the same rule against retroactivity to the parallel one-year statute of limitations for federal post-conviction relief under 28 U.S.C.A. § 2255), *overruled on other grounds,* 322 F.3d 1256, 1261 (10th Cir. 2003).

preexisting causes of action commenced after the act's effective date and suddenly cut off by the act's strict application. To avoid a cut off that would violate the Constitution, the courts held in cases like *Hoggro*, *Craycraft*, and *Moore* that the new, one-year statute of limitations would not begin to run against preexisting causes of action until AEDPA's effective date on April 24, 1996, and would not expire until April 24, 1997. This is the source of the additional one-year period for commencing such actions recognized in cases such as *Moore*. 173 F.3d at 1135.

[¶16.]        Hughbanks's habeas action falls into a similar category of cases because Hughbanks did not commence his action until after the effective date of SDCL 21-27-3.3. Like the federal courts, we similarly conclude, based on our judicial interpretation, that the habeas court did not err in applying SDCL 21-27-3.3 to Hughbanks's action.[8] However, we must still decide whether the habeas court could grant Hughbanks a judicially-created period of extension.

## Issue 2

[¶17.]        **Whether, in retroactively applying SDCL 21-27-3.3 to Hughbanks' action, the habeas court had authority to delay commencement of the two-year limitations period until July 1, 2012, the effective date of the statute.**

[¶18.]        As set forth under Issue 1, the additional period recognized by the federal courts for timely commencement of federal habeas actions under the new statute of limitations in the AEDPA was a product of those courts' judicial

---

8.      This conclusion is consistent with *Engesser v. Young*, 2014 S.D. 81, ¶ 27, 856 N.W.2d 471, 481 in which we applied the 2012 amendments to the state habeas corpus law, including SDCL 21-27-3.3, to a 2001 conviction where the habeas action was not commenced until 2013.

construction or interpretation of that act. It is similarly within this Court's power to interpret statutes. *See Hot Springs Indep. Sch. Dist. No. 10 v. Fall River Landowners Ass'n*, 262 N.W.2d 33, 39 (S.D. 1978) (noting that "[t]he interpretation of an existing statute is a judicial . . . function" (quoting *Des Moines Ind. Common Sch. Dist. v. Armstrong*, 95 N.W.2d 515, 521 (Iowa 1959))). *See also State v. Custer*, 871 N.W.2d 243, 257 (Neb. 2015) (noting that "a court's proper role is to interpret statutes and clarify their meaning)." Statutory interpretation "is a question of law." *State v. Clements*, 2013 S.D. 43, ¶ 6, 832 N.W.2d 485, 486. "When a court is faced with a question of statutory construction, it is not making new law, but rather interpreting existing law." *Burgard v. Benedictine Living Communities*, 2004 S.D. 58, ¶ 16, 680 N.W.2d 296, 301. This includes interpreting the proper application of statutes of limitation. *See, e.g., id; Peterson, ex rel. Peterson v. Burns*, 2001 S.D. 126, 635 N.W.2d 556 (determining as a matter of statutory construction that the medical malpractice statute of limitations covered wrongful death actions caused by medical malpractice).

[¶19.]     SDCL 21-27-3.3, like the AEDPA, contains no explicit provision governing its application to preexisting causes of action not commenced until after the effective date of the statute and suddenly cut off by its provisions. The language of the statute, however, is taken almost verbatim from comparable provisions in the AEDPA. *Compare* SDCL 21-27-3.3, *with* 28 U.S.C. § 2244(d)(1), *and* 28 U.S.C. § 2255(f). Furthermore, it was passed almost sixteen years after the AEDPA and, presumably, with cognizance of the numerous federal court decisions interpreting that act. *See St. Paul Mercury Ins. Co. v. Andrews*, 321 N.W.2d 483, 485-86 (N.D.

1982) (noting the presumption that when the legislature "adopt[s] a statute from another jurisdiction, [it] adopt[s] the contemporaneous construction of its provisions by the courts of that jurisdiction"). *Accord Melby v. Anderson*, 64 S.D. 249, 266 N.W. 135, 136 (1936) (noting that where the Legislature adopts the law of another state, it is "the general presumption that the South Dakota Legislature intended to enact [the] law with the meaning that the courts of [the other state] had previously placed upon [it]"). Therefore, we interpret SDCL 21-27-3.3 in a manner consistent with the federal court decisions discussed above. *See Waterman v. Morningside Manor*, 2013 S.D. 78, ¶ 18, 839 N.W.2d 567, 572 (noting that where a federal version of a rule "is equivalent to our rule . . . [this Court] can look to decisions from federal courts for analytical support"). Such construction and the constitutional considerations underlying the federal court decisions are also in accord with the principle that it is this Court's duty to apply a statute "in a constitutional manner" and "to choose [an] interpretation, if feasible, that will uphold the validity of the statute." *In re A.L.*, 2010 S.D. 33, ¶ 19, 781 N.W.2d 482, 487.

[¶20.]     Although not controlling, the legislative history of SDCL 21-27-3.3 supports interpreting the statute in a manner consistent with the federal court decisions. *See In re Adoption of A.A.B.*, 2016 S.D. 22, ¶ 9, 877 N.W.2d 355, 361 (quoting *Jensen v. Turner Cty. Bd. of Adjustment*, 2007 S.D. 28, ¶ 5, 730 N.W.2d 411, 413) (referring to legislative history "is justified . . . when legislation is ambiguous, or its literal meaning is absurd or unreasonable"). Testimony before legislative committees about the statute from the State Attorney General and an individual legislator who supported the bill reveals that the Legislature intended

the statute to function consistently with the AEDPA. Here, SDCL 21-27-3.3, like the AEDPA, does not clearly indicate that it applies to convictions made final before passage of the statute. And misapplication of the statute risks unreasonably cutting off such actions in violation of the Constitution as noted in cases such as *Kotval*, 698 F.2d at 347 n.5. Therefore, this is a suitable case for consideration of legislative history, although the views expressed by individuals before legislative bodies are not always indicative of legislative intent. *See Eagleman*, 2015 S.D. 22, ¶ 11, 862 N.W.2d at 845 (noting that "the motivation of a few representatives cannot be attributed to the Legislature as a whole").

[¶21.]        We are aware of holdings in some jurisdictions that courts should not fill a legislative gap created by failing to provide for a reasonable time for filing suit on preexisting causes of action when the legislature shortens a statute of limitations. *See, e.g., Adams & Freese Co. v. Kenoyer*, 116 N.W. 98, 99 (N.D. 1908) (noting that if the legislature fails to fix a reasonable time for bringing existing causes of action under an amended statute of limitations, "the courts cannot . . . supply this legislative lapse").[9] However, we have not identified a holding in a case similar to this one where the Legislature adopted the amended statute of

---

9.       *See also Falgout v. Dealers Truck Equip. Co.*, 748 So. 2d 399, 408 (La. 1999) (holding that "[w]hen the legislature enacts a prescriptive [limitations] statute that potentially affects existing causes of action and fails to require parties to exercise their vested rights within a reasonable time, 'the courts should refrain from supplying this legislative lapse'" (quoting *Maltby v. Gauthier*, 506 So. 2d 1190, 1193 (La. 1987))); *Flippin v. Jarrell*, 270 S.E.2d 482, 487 (N.C. 1980) (noting that "[t]he fixing of the time within which to bring suit" on existing causes of action when a statute of limitations is shortened "is not within the power of the judiciary" (quoting *Barnhardt v. Morrison*, 101 S.E. 218, 221 (N.C. 1919))).

limitations nearly verbatim from another jurisdiction with a significantly developed body of case law interpreting how to apply the statute to preexisting causes of action. Moreover, unlike cases from other courts, we have legislative history supporting application of the amended statute in the same manner as in the original jurisdiction. Under the unique circumstances of this case, we believe it is consistent with legislative intent to interpret the amended statute in the same manner as in the original jurisdiction, *i.e.*, the federal courts. *See Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74 (noting that the purpose of statutory construction is "to determine legislative intent" (quoting *In re West River Elec. Ass'n, Inc.*, 2004 S.D. 11, ¶ 15, 675 N.W.2d 222, 226)). This means that the habeas court had authority to grant Hughbanks an additional two years from July 1, 2012, to permit the timely filing of his habeas action. Granting that period would have rendered Hughbanks's action, filed on April 2, 2014, timely. The court erred in granting summary judgment for the State based upon a violation of the statute of limitations.

**CONCLUSION**

[¶22.]     With reference to Issue 1, we hold that the habeas court did not err in applying SDCL 21-27-3.3 to Hughbanks's action because Hughbanks commenced the action after the effective date of the statute. As to Issue 2, we hold that, in applying SDCL 21-27-3.3 to Hughbanks's action, the habeas court had the requisite authority to delay commencement of the two-year limitations period until July 1, 2012, the effective date of the statute. Because Hughbanks filed the action within the two years, the habeas court erred in granting summary judgment against

Hughbanks for violating the statute of limitations in SDCL 21-27-3.3. Having determined that the habeas court erred in granting summary judgment, we do not address Hughbanks's argument under SDCL 21-27-3.3(4) concerning the date of discovery of the factual predicates for his claims.

[¶23.]     Reversed and remanded.

[¶24.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.