#29965-a-PJD
**2023 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the
Termination of Parental Rights over
I.A.D, L.J.D., and C.M.D., Minor Children.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRISTINA L. KLINGER
Judge

* * * *

EDWARD S. HRUSKA III of
Bachand & Hruska, P.C.
Pierre, South Dakota                          Attorneys for appellant mother.


AARON P. PILCHER
Huron, South Dakota                           Attorney for appellee father.

* * * *

ARGUED
OCTOBER 5, 2022
OPINION FILED **07/19/23**

#29965

DEVANEY, Justice

[¶1.] Mother petitioned the circuit court under SDCL chapter 25-5A for the involuntary termination of Father's parental rights, claiming that such termination is in the best interests of the children and that Father's consent to the termination could be waived pursuant to SDCL 25-6-4. In response, Father indicated that he did not consent to the termination of his parental rights and asserted that his consent could not be deemed waived because Mother is not requesting that the children be adopted. After an evidentiary hearing on the merits of Mother's petition, the circuit court concluded that it did not have statutory authority to terminate Father's parental rights against his wishes in the absence of an adoption. The court alternatively held that termination would not be appropriate because Mother failed to comply with the provisions in chapter 25-5A and failed to meet her burden of proving waiver of consent and that termination would be in the children's best interests. Mother appeals, and we affirm the circuit court's determination that SDCL chapter 25-5A cannot be used to involuntarily terminate a parent's rights without a corresponding adoption.

### Factual and Procedural Background

[¶2.] Mother and Father are the natural parents of three minor children, I.A.D., L.J.D., and C.M.D. Mother and Father were married in 2011, approximately one and a half years after I.A.D. was born. After having two more children, the couple divorced in 2017, when the youngest child, C.M.D., was approximately two years old. Father admits he has a long history of substance abuse and criminal

activity. It is undisputed that Father was addicted to opiates, and in 2009, he was convicted in federal court of distribution of marijuana.

[¶3.] Father also admits that his continued drug use and criminal activity negatively affected Mother and the children. Mother testified about a particular incident that had occurred in 2012, wherein a man to whom Father owed money entered the home, demanded money from Father, and pushed Mother against the wall while I.A.D. and L.J.D. were there. Mother testified that after this incident, she moved out of the home with the two children (the youngest had not been born yet).

[¶4.] After Mother moved out, Father was not involved in the children's lives. However, by the end of 2013 and beginning of 2014, Mother and Father began to reconcile. She became pregnant with their third child, and in 2015, she and all three children were living with Father. However, according to Mother, Father was frequently absent from the home, and he continued to use substances. Father also had emotional and physical outbursts that negatively affected her and the children. These included acts of physical violence against Mother. Despite such incidents, the couple continued to live together, but according to Mother, she kept her distance from Father as much as she could.

[¶5.] In February 2016, Father was driving around town with the two younger children in his vehicle. He stopped the vehicle outside a home and left the children in the vehicle while he burglarized the home to support his drug addiction. Father was apprehended by law enforcement and was later charged in an eight-count indictment with, among other charges, second-degree burglary, intentional

damage to private property, and contributing to the abuse, neglect, or delinquency of a child. At the time of this 2016 incident, Father had charges pending in two other criminal files, including charges in a June 2015 indictment for grand theft by possession of stolen property and in an October 2015 indictment for second-degree burglary and intentional damage to property.

[¶6.] In a July 2016 court proceeding, Father was sentenced to five years in prison for grand theft by possession of stolen property; ten years in prison with five years suspended for second-degree burglary; and ten years in prison with five years suspended for third-degree burglary. These sentences were ordered to run concurrently. The couple divorced in July 2017, while Father was incarcerated. Although the judgment and decree of divorce is not included in this record, Mother testified that she has sole legal and physical custody of the children and that Father agreed to these terms.

[¶7.] According to Father, he decided during his incarceration that he wanted to live a different life and be a better father to his children. He acknowledged his harmful parental conduct and claimed that it was the result of his drug addiction. Father also claimed that he worked on his addiction recovery in prison by attending counseling and working on a treatment plan.

[¶8.] Father was released from prison in November 2018 and on the day he was released, he picked his children up from school and began exercising regular visitation with them thereafter. The record does not disclose a written custody or visitation agreement, but both Mother and Father testified that they had verbally agreed that after his release, visitation would occur with Father every other

weekend and one night a week. Father testified that from February 2019 to July 2020, he exercised regular visitation with the children, and from January 2020 to July 2020, this included overnight visits every other weekend. Mother did not dispute that Father exercised regular visitation. She noted, however, that she and Father did not get along and communications concerning the children occurred between Mother and Father's new wife.[1] Mother also noted that in March 2019, Father was arrested for driving under the influence on his way to pick up the older two children from school, and that despite being employed, he was not paying child support.

[¶9.] In July 2020, Mother stopped allowing Father visitation with the children, and in response, Father sent Mother a letter dated August 6, 2020, with a proposed stipulation and agreement governing custody, visitation, and child support. In her written reply on August 28, Mother identified her concerns with past visits and requested that Father address twenty-six issues, which she described in detail, before she would allow visitation to resume. Among other issues, Mother requested that Father take a drug test before each visit; sign a release giving his parole officer permission to provide information to Mother; remove any firearms from his possession; not leave the children alone at events or at home; not have the children babysit other children (Father's wife's children); take anger management classes; allow the children to have access to their phones; and start paying child support and his share of the children's expenses.

---

1.      Father remarried on May 23, 2019.

[¶10.]    Father claimed that after receiving this letter, he did not reply; rather, he began looking for an attorney to assist him in obtaining visitation with the children. Father acknowledged that he did not personally reach out to Mother to attempt to resume visitation. However, the record reflects that Father's wife did contact Mother twice to attempt to arrange visitation for the children with Father but to no avail. Mother testified that she did not allow visitation because Father had not yet replied to her letter requesting that he address the enumerated issues identified therein.

[¶11.]    In June 2021, Mother filed a petition pursuant to SDCL 25-5A-6 to terminate Father's parental rights. In the petition, Mother alleged it would be in the children's best interests to terminate Father's parental rights and that, pursuant to SDCL 25-6-4, the circuit court could waive Father's consent because he involved the children in furtherance of his criminal activity for which he was later convicted; he continued to commit crimes after being released on parole; he abandoned the children for the eight months preceding the petition; and he has not paid child support. Mother's petition also requested that the requirements in other provisions of SDCL chapter 25-5A relating to medical and social histories, counseling, and the home study requirement in SDCL chapter 25-6 be waived because the children would remain in Mother's custody. Father opposed the petition, asserting that he does not desire to relinquish his parental rights and that his consent cannot be deemed waived.

[¶12.]    The circuit court held an evidentiary hearing on Mother's petition, and at the conclusion of the hearing, the court directed the parties to submit briefing on

the merits and on the question whether the court has statutory authority to involuntarily terminate Father's parental rights. After considering the post-hearing briefs, the court issued findings of fact and conclusions of law, ultimately concluding that it does not have authority under SDCL chapter 25-5A to grant Mother's petition to terminate Father's parental rights against his wishes absent a corresponding adoption. The court determined that chapter 25-5A only allows a parent to request termination of the parental rights of another parent when there is (1) consent by the respondent parent or (2) waiver of consent and a corresponding adoption pursuant to SDCL 25-6-4. The circuit court alternatively held that even if it had authority to grant Mother's request, it would deny Mother's petition because she did not substantially comply with the provisions in chapter 25-5A; did not meet her burden of proving the existence of the circumstances under which the court could deem Father's consent waived pursuant to SDCL 25-6-4; and did not establish that termination would be in the children's best interests.

[¶13.] Mother appeals, asserting that the circuit court erred in concluding that it did not have authority to terminate Father's parental rights under SDCL chapter 25-5A and further erred in its alternative rulings. Because our resolution of Mother's first issue is dispositive of the appeal, we address only that issue.

**Analysis and Decision**

[¶14.] Mother contends that the historical evolution of SDCL 25-5A-18 is instructive on the question whether a circuit court is authorized to terminate a parent's parental rights against that parent's wishes via a petition brought under

SDCL chapter 25-5A. The Legislature enacted chapter 25-5A in 1971, and at that time, SDCL 25-5A-18 provided:

> Should the court find that the termination of parental rights and their transfer to be in the best interests of the child, and that the petitioner or petitioners are fully aware of the purpose of the proceedings and the consequences of their act, it shall make an order terminating the parental rights and obligations in the parent or parents in which they have existed and releasing the child from all legal obligations to his parents, and transferring such parental rights to some other person or persons, or authorized agency as may in the opinion of the court, be best qualified to receive them.

1971 S.D. Sess. Laws ch. 165, § 7. In 1995, the Legislature amended SDCL 25-5A-18 in relevant part to provide:

> ~~Should~~ Upon proof of the notice required by § 25-5A-9, to all putative fathers of a child, if, after the court determines that the parents have consented *or have waived consent pursuant to SDCL 25-6-4,* the court ~~find~~ finds that the termination of parental rights and ~~their~~ the transfer of the parental rights to be in the best interests of the child, and that the petitioner or petitioners are fully aware of the purpose of the proceedings and the consequences of their act, ~~it~~ the court shall make an order terminating all parental rights and obligations in the parent or parents in which they have existed and releasing the child from all legal obligations to ~~his~~ the parents, ~~and transferring such~~ even though the proceeding for termination is brought by only one parent. The court shall also order that the parental rights are transferred to some other person or persons, or authorized agency as may, in the opinion of the court, be best qualified to receive them. ~~Such~~ The order may contain the power by ~~such~~ the person or persons or authorized agency to consent to the adoption of ~~such~~ the child, as provided for in § 25-6-12, without further notice to ~~its~~ the child's parent or parents or any other person having ~~such~~ parental rights over the child. The court may specifically terminate the parental rights of all putative fathers regardless of whether both parents are present.

1995 S.D. Sess. Laws ch. 143, § 2 (strikethrough and underscore in session law; italics added).[2]

[¶15.] According to Mother, the amendments to SDCL 25-5A-18 reveal that the Legislature intended to expand the scope of the circuit court's authority to terminate all parent's parental rights with the imputation of consent whenever the evidence supports waiver of such consent under SDCL 25-6-4.[3] Mother further contends that when SDCL 25-5A-18 is read with SDCL 25-5A-2, which contains language contemplating the occurrence of a termination *without* a corresponding adoption, the circuit court erred when it concluded that the termination of a parent's rights against that parent's wishes is conditioned on there being a corresponding adoption.

[¶16.] This Court has not yet been asked to interpret whether the 1995 amendment to SDCL 25-5A-18 indicates legislative intent to allow a parent to request the involuntary termination of the parental rights of another parent without a corresponding adoption. "Questions of statutory interpretation and

2. The Legislature further amended SDCL 25-5A-18 in 1996 and 2013, but these later amendments do not pertain to the statutory language at issue in this appeal.

3. Rather than focus on the legislative amendments in 1995 (adding a provision allowing consent to be waived), Mother directs this Court to an amendment to SDCL 25-5A-18 in 1996 adding a reference to the termination of the parental rights of all parents rather than just putative fathers. While Mother is correct that SDCL 25-5A-18 authorizes a circuit court to terminate the parental rights of *all* parents, such authority has existed from the statute's inception in 1971. *See* 1971 S.D. Sess. Laws ch. 165, § 7 (containing language directing the court to "make an order terminating the parental rights and obligations *in the parent or parents*" (emphasis added)). Also, this particular amendment in 1996 is not pertinent to the issues in this appeal.

application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *Farmer v. Farmer*, 2022 S.D. 47, ¶ 34, 979 N.W.2d 173, 183 (citation omitted). Further, the rules of statutory interpretation are well settled. As the Court recently stated,

> "[W]e give words their plain meaning and effect, and read statutes as a whole." *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 11, 932 N.W.2d 135, 139 (quoting *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13 (quoting *State v. Myrl & Roy's Paving, Inc.*, 2004 S.D. 98, ¶ 6, 686 N.W.2d 651, 654). "When, however, 'statutory construction is required statutes must be construed according to their intent, and the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.'" *Olson v. Butte Cnty. Comm'n*, 2019 S.D. 13, ¶ 5, 925 N.W.2d 463, 464 (quoting *Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74).

*Fraternal Order of Police, Vermillion Lodge No. 19, Yankton Police Officers' Ass'n v. City of Yankton*, 2020 S.D. 52, ¶ 20, 949 N.W.2d 412, 417.

[¶17.] SDCL chapter 25-5A provides the procedural framework for filing a petition seeking to *voluntarily* terminate parental rights. *See, e.g.*, SDCL 25-5A-3 (authorizing a parent to petition for the *voluntary* termination of parental rights); SDCL 25-5A-6(7) (requiring "[t]he petition for *voluntary termination* of parental rights" to contain the "[c]onsent of the petitioner or petitioners" (emphasis added)). Under certain circumstances, however, a court may waive the consent of a parent to terminate that parent's rights. *See* SDCL 25-5A-18 (allowing the circuit court to deem a parent's consent waived pursuant to SDCL 25-6-4). But contrary to Mother's view, the waiver of consent language in SDCL 25-5A-18 does not authorize

a circuit court to involuntarily terminate a parent's parental rights without a corresponding adoption. SDCL 25-5A-18 incorporates SDCL 25-6-4 in its entirety, not just the specific circumstances listed in the statute under which consent may be deemed waived. Therefore, it is necessary to consider SDCL 25-6-4 as a whole.

[¶18.] SDCL 25-6-4 begins with the premise that "[n]o child may be *adopted* without the consent of the child's parents." (Emphasis added.) It then provides that "if it is in the best interest of the child, the court may waive consent from a parent" under certain enumerated circumstances. *Id.* When these two sentences are read in tandem, SDCL 25-6-4 requires a determination that "the child's best interests will be served by terminating the rights of the parent *so that an adoption can proceed without that parent's consent.*" *In re Adoption of C.D.B.*, 2005 S.D. 115, ¶ 11, 706 N.W.2d 809, 814 (emphasis added) (reviewing a circuit court's termination of parental rights under SDCL 25-6-4). Because it is clear under SDCL 25-6-4 that a court may deem consent waived only for the specific purpose of facilitating an adoption, and because SDCL 25-5A-18 incorporates SDCL 25-6-4 in its entirety, a waiver of consent *pursuant to SDCL 25-6-4* under the provisions in SDCL 25-5A-18 must likewise be for the purpose of adoption.

[¶19.] Importantly, Mother directs this Court to no other language in SDCL 25-5A-18, or in any other provision in SDCL chapter 25-5A for that matter, indicating that the Legislature intended to allow a parent, outside the context of an adoption, to petition for the *involuntary* termination of another parent's rights. Although Mother relies heavily on SDCL 25-5A-2 because it provides that the procedure for termination of parental rights may be used even though the

alternative plan for providing care for the child does not necessarily include an adoption, this statute specifically refers to "*voluntary termination*" procedures wherein "the parent or parents of any child *desires to relinquish such parental rights*." (Emphasis added.) As the circuit court aptly concluded, the term "voluntary" requires an exercise of one's own will or desire, and here, Mother was attempting to terminate Father's rights against his will and expressed desire.

[¶20.] Moreover, interpreting SDCL 25-5A-18 to mean that a circuit court is only authorized to terminate a parent's parental rights in the absence of the parent's express consent when the court deems the parent's consent waived for the purpose of facilitating an adoption aligns with other provisions in SDCL chapter 25-5A. In fact, the remainder of SDCL 25-5A-18 and numerous other statutes within the chapter are geared toward the scenario where the termination of parental rights is followed by the transfer of parental rights and an adoption.

[¶21.] For example, the additional language in SDCL 25-5A-18 provides that after terminating parental rights, the court shall "order that the parental rights are *transferred to some other person or persons*, or authorized agency as may, in the opinion of the court, be best qualified to receive them"; and "[t]he order may contain the power by the person or persons or authorized agency to consent to the adoption of the child, as provided for in § 25-6-12, without further notice to the child's parent or parents or any other person having parental rights over the child." (Emphasis added.) *See also* SDCL 25-5A-6(8) (requiring that a petition under SDCL chapter 25-5A to contain the "[c]onsent executed by the person or persons or authorized agency to whom or to which parental rights are to be transferred"). Absent from

chapter 25-5A is any provision that plainly authorizes a circuit court to terminate a parent's parental rights *against that parent's wishes* for a purpose other than adoption.

[¶22.]     Although Mother notes that this Court previously affirmed a circuit court's termination of a parent's parental rights upon the petition of another parent in the absence of a corresponding adoption, the case on which she relies involved a *voluntary* termination and is procedurally distinct. *See In re M.A.C.*, 512 N.W.2d 152 (S.D. 1994). In *M.A.C.*, after mother and father divorced, father had no contact with his children. *Id.* at 153. Mother remarried, and at her request, father signed a petition for the voluntary termination of his parental rights and gave mother power to consent to an adoption based on his understanding that stepfather would adopt the children. *Id.* The circuit court entered an order terminating father's parental rights, but for reasons not clear from the sparse record, the stepfather did not consent to the adoption and no adoption proceeding occurred thereafter. *Id.* at 153–54.

[¶23.]     Two years later, mother and stepfather divorced, and mother sought child support from stepfather for the children. *Id.* at 153. In the divorce proceeding, the circuit court ordered stepfather to pay child support despite the fact that stepfather never adopted the children. *Id.* Stepfather appealed, challenging the order in the divorce decree directing him to pay child support. *E.H. v. M.H.*, 512 N.W.2d 148 (S.D. 1994). He also filed a motion in the earlier termination proceeding to set aside the termination order, alleging that several procedural deficiencies in the proceeding made the order void. *M.A.C.*, 512 N.W.2d at 154.

While this Court reversed the circuit court's child support order in *E.H.*, 512 N.W.2d at 151, in *M.A.C.*, the Court upheld the circuit court's order declining to set aside the order terminating father's parental rights despite procedural errors and a lack of technical compliance with SDCL chapter 25-5A, 512 N.W.2d at 155–56.

[¶24.]     Because the petition in *M.A.C.*, unlike Mother's petition here, was for the *voluntary* termination of father's parental rights, the scenario in *M.A.C.* fits squarely within the parameters of SDCL 25-5A-2. *M.A.C.* does not therefore support Mother's contention that the circuit court had authority to *involuntarily* terminate Father's parental rights where there was no corresponding adoption intended.

[¶25.]     Based on our review of SDCL chapter 25-5A as a whole, we conclude that the termination of a parent's parental rights on a petition filed by the other parent under SDCL chapter 25-5A is authorized when there is consent by the respondent parent, with or without a corresponding adoption, or when the consent of a parent is deemed waived pursuant to SDCL 25-6-4 to facilitate an adoption. This, of course, assumes that in both instances, all the other provisions of chapter 25-5A are met. Because Father has not consented and Mother did not petition to terminate Father's rights to facilitate an adoption, the circuit court did not err in dismissing her petition.

[¶26.]     Affirmed.

[¶27.]     JENSEN, Chief Justice, and KERN, Justice, concur.

[¶28.]     SALTER and MYREN, Justices, concur specially and in result.

#29965

SALTER, Justice (concurring specially and concurring in result)

[¶29.] I agree with the Court that SDCL 25-5A-18 cannot be construed to support Mother's position in this case. I write separately to emphasize what I believe to be the most important textual aspects of the statute.

[¶30.] The provisions of SDCL 25-5A-18 do not simply contemplate the termination of parental rights; they also require that the rights be *transferred* and *received* by a person or an agency.

> [I]f, after the court determines that the parents have consented or have waived consent pursuant to § 25-6-4, the court finds that the termination of parental rights and the transfer of parental rights to be in the best interests of the child, and finds that the petitioner or petitioners are fully aware of the purpose of the proceedings and the consequences of their act, the court shall make an order terminating all parental rights . . . in the parent or parents[.] . . . *The court shall also order that the parental rights are transferred to some other person or persons, or authorized agency as may, in the opinion of the court, be best qualified to receive them.*

SDCL 25-5A-18 (emphasis added.)

[¶31.] Logically, the person who *receives* the parental rights cannot be the petitioning parent, whose rights remain completely intact. Concluding that Mother could receive Father's parental rights and somehow "hold" them, in addition to her own, creates an unsustainable construct that lacks support in our statutory or decisional law. Instead, SDCL 25-5A-18's text points to the opposite conclusion by requiring that the parental rights be transferred to and received by "some *other* person or persons, or authorized agency[.]" (Emphasis added.)

[¶32.] The Court's discussion concerning how, or how much, of SDCL 25-6-4 is incorporated by the statute's reference in SDCL 25-5A-18 is, in my view,

-14-

unnecessary and likely not accurate. As to this latter point, I believe the Court incorrectly holds that SDCL 25-5A-18's reference to SDCL 25-6-4 incorporates the entirety of the statute to include the first line — "No child may be adopted without the consent of the child's parents."

[¶33.] But SDCL 25-6-4 is not necessary to guide or inform a court on the self-evident topic of actual consent; it is only helpful for the more nettlesome determination of waived or imputed consent. For this reason, the text of SDCL 25-5A-18 — "after the court determines that the parents have consented or have waived consent pursuant to § 25-6-4" — is best read as a specific effort by the Legislature to incorporate only the portions of SDCL 25-6-4 which relate to the authority of a court to waive a parent's consent.

[¶34.] Regardless, the provisions of SDCL 25-6-4 have nothing to do with the correct construction of SDCL 25-5A-18 in this case because we do not need to reach the question of whether Father's consent should be waived. Fundamentally, Mother does not have a statutory right of action to seek the termination of Father's parental rights without a corresponding effort to *transfer* those rights to another person or an agency who would, in turn, *receive* them, as explained above.

[¶35.] MYREN, Justice, joins this writing.