#28644, #28657-a-MES
**2020 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NEIL H. GRAFF and DEBRA A. GRAFF,
as Parents and Guardians of
BENJAMIN B. GRAFF, disabled,                          Plaintiffs and Appellants,

v.

CHILDREN'S CARE HOSPITAL
AND SCHOOL, a South Dakota
Corporation,                                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Retired Judge
* * * *

MICHAEL L. LUCE
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & Lebrun, P.C.
Sioux Falls, South Dakota

VINCENT A. PURTELL of
Heidepriem, Purtell & Siegel, LLP
Sioux Falls, South Dakota                             Attorneys for plaintiffs and
                                                      appellants.


MARK W. HAIGH
EDWIN E. EVANS
TYLER W. HAIGH of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                             Attorneys for defendant
                                                      and appellee.
* * * *

ARGUED
OCTOBER 1, 2019
OPINION FILED **05/06/20**

#28644, #28657

SALTER, Justice

[¶1.] With his parents acting as guardians ad litem, Benjamin Graff (Ben) sued Children's Care Hospital and School (CCHS), alleging it was negligent and inflicted emotional distress by using physical restraints on him when he received services at CCHS.[1] A jury found in favor of CCHS. Ben appeals, asserting the circuit court abused its discretion by excluding various Department of Health surveys and by taxing partial disbursements against his parents. By notice of review, CCHS contends the circuit court erred by not dismissing the action as untimely and by determining the standard of care as it did. CCHS also argues the court abused its discretion by declining to tax full disbursements against Ben's parents. Because the lack of a trial transcript precludes meaningful appellate review, we affirm the circuit court's decision to exclude the Department of Health surveys and its decision taxing disbursements, making it unnecessary to address CCHS's claims relating to timeliness and the standard of care.

---

1. Specifically, Ben alleged in his complaint that CCHS breached its duty to:

> exercise reasonable care in the implementation and development of plans for Ben; to make sure plans, policies and standards were followed; to properly monitor Ben's services, including any implementation of restraints, to make sure such restraints adhered to legal and professional standards; to properly train, supervise and monitor staff; and to correct any violations by staff as to plans and standards before additional harm or damage would be sustained by Ben.

However, the parties' submissions on appeal have focused solely on CCHS's use of physical restraints on Ben. We will confine our review accordingly.

## Background

[¶2.] Ben was born prematurely and started exhibiting signs of developmental delays when he was approximately one and one-half years old. Since then, he has been diagnosed with a variety of conditions related to his physical, mental, and intellectual abilities. His full-scale IQ is between 30 and 42 placing him in the moderately to severely impaired range of intellectual ability. Ben's cognitive and expressive communication skills are significantly limited, and he functions at the level of a three- to four-year-old child. Ben's parents, Neil and Debra Graff, are supportive of him, and records describe them as "very strong advocates for [Ben]."

[¶3.] Ben has required professional assistance throughout his life. He started receiving services through CCHS in 1995. In 2007, as a teenager, he began acting out aggressively and refusing to attend classes at the public middle school where he was in a mainstream classroom. During the 2008-2009 school year, he began receiving day-student services from CCHS, but he was also still enrolled at the public school, "going to both places." Ben's struggles continued into high school when, during the 2009-2010 school year, he was suspended for becoming aggressive with a staff member at the public school. In March 2010, at the recommendation of his individualized-education-program team, Ben enrolled in CCHS's residential treatment program. By that time, he was 16 years old.

[¶4.]     While Ben was in CCHS's residential care in 2010, CCHS employees used physical restraints on him, including prone, or face-down, restraints.[2] CCHS's documentation indicated it used physical restraints on Ben when he was either hitting, kicking, biting, pulling hair, grabbing/pinching, or throwing objects. When Ben exhibited these behaviors, CCHS employees considered Ben a danger to himself or others. Ben was physically restrained over 140 times during his seven-month residential stay at CCHS.

[¶5.]     Ben's parents removed him from CCHS's residential treatment program on September 21, 2010. One week later, on September 28, 2010, CCHS discharged him from all other services. Ben turned 18 on January 12, 2012, and through his parents acting as guardians ad litem, he commenced this action. In his complaint, Ben alleged CCHS was negligent in its use of physical restraints on him; failed to provide his parents with adequate information regarding physical restraints, resulting in a lack of informed consent; and intentionally and negligently inflicted emotional distress upon him and his parents by its use of physical restraints. Ben maintained both he and his parents suffered damages resulting from CCHS's conduct.

[¶6.]     CCHS moved for summary judgment, arguing Ben's claims actually asserted medical malpractice and were time-barred by the applicable statute of

_____

2.     CCHS no longer uses prone restraints.

repose.[3] CCHS further argued Ben's parents' claims for emotional distress should be dismissed because South Dakota law does not recognize a parent's claim for emotional distress based on a child's injury. The circuit court determined Ben's claims were not grounded in medical malpractice and denied CCHS's motion for summary judgment. Ben voluntarily withdrew his parents' claims for emotional distress approximately two months before the trial began. He also withdrew his claim for lack of informed consent, leaving only claims for negligence and Ben's emotional distress for the jury to decide.

[¶7.] Before the trial, CCHS filed a motion in limine to exclude any reference to certain surveys conducted by the South Dakota Department of Health. The surveys were performed to assess CCHS's compliance with Medicaid and Medicare requirements. Ben was not a resident at CCHS when most of the surveys at issue were completed. And for the one survey completed while he was a resident, there were no deficiencies noted specifically pertaining to Ben or the use of physical restraints. Following an in-camera review, the circuit court found the surveys merely reflected "deficiencies in record-keeping." The circuit court granted the motion in limine and excluded the surveys, concluding they did not provide the

---

3.      SDCL 15-2-14.1 provides, in part:

> An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred . . . .

proper standard of care regarding the use of physical restraints and, as such, were of "limited relevance."

[¶8.]        Initially, the circuit court determined, sua sponte, that certain statutes relating to corporal punishment provided the standard of care for the use of physical restraints in this case.[4]  However, during a pretrial conference held immediately before jury selection, Ben objected to the application of the corporal punishment statutes.  The circuit court ultimately concluded the corporal punishment statutes were not applicable and, instead, instructed the jury on certain statutes relating to persons with developmental disabilities over CCHS's objection.[5]  After a three-week trial, the jury returned a verdict in favor of CCHS on all of Ben's claims.

---

4.    The circuit court determined SDCL 22-18-5 and 13-32-2 provided the proper standard of care.  SDCL 22-18-5 provides:

> To use or attempt to use or offer to use force upon or toward the person of another is not unlawful if committed by a parent or the authorized agent of any parent, or by any guardian, teacher, or other school official, in the exercise of a lawful authority to restrain or correct the child, pupil, or ward and if restraint or correction has been rendered necessary by the misconduct of the child, pupil, or ward, or by the child's refusal to obey the lawful command of such parent, or authorized agent, guardian, teacher, or other school official, and the force used is reasonable in manner and moderate in degree.

SDCL 13-32-2 provides, in part:

> Superintendents, principals, supervisors, and teachers and their aids and assistants, have the authority, to use the physical force that is reasonable and necessary for supervisory control over students.

5.    Specifically, the circuit court instructed the jury on various statutes contained in Title 27B, which relate to developmentally delayed persons.

[¶9.]      CCHS filed an application for taxation of disbursements in the amount of $24,519.63 following the jury verdict.  Ben objected, contending it would be inequitable, unjust, and contrary to the interests of justice to tax disbursements against him directly, though he also argued that any taxation of disbursements should not be entered against his parents who were not the real parties in interest.  At the hearing on the application, CCHS clarified it was seeking disbursements against Ben's parents, and not Ben.  The circuit court determined there were "three causes of action" in the case and "one of those causes of action was by [Ben's parents] in their own right rather than in their guardianship capacity . . . ."  Accordingly, the circuit court "reduce[d] the requested award by two-thirds" and taxed disbursements against Ben's parents in the amount of $7,606.54.

[¶10.]      Ben filed an appeal from the final judgment.  As part of his appeal, he ordered transcripts of two discussions that occurred outside of the presence of the jury, but he declined to order the full trial transcript or any other transcripts from prior hearings.  CCHS filed a notice of review and, shortly thereafter, filed a motion to compel Ben to order the full trial transcript.  CCHS eventually abandoned its motion and, instead, ordered various transcripts of matters that occurred outside of the presence of the jury, as well as the transcript of the hearing on its motion for summary judgment.  As a result, the record on appeal does not contain a transcript of the jury trial.

[¶11.]      Ben raises the following issues for our review, which we restate as follows:

> 1. Whether the circuit court abused its discretion when it excluded the Department of Health surveys.

2. Whether the circuit court abused its discretion by ordering the partial taxation of disbursements against Ben's parents.

[¶12.]     By notice of review, CCHS raises these additional issues, restated as follows:

1. Whether the circuit court erred in denying CCHS's motion for summary judgment based upon the statute of repose.

2. Whether the circuit court abused its discretion by instructing the jury about the essential elements of Ben's claims, including the duty owed based upon its application of Title 27B.

3. Whether the circuit court abused its discretion by not taxing the full amount of disbursements CCHS requested.

**Analysis**

*Exclusion of Department of Health Surveys from Evidence*

[¶13.]     "The [circuit] court's evidentiary rulings . . . will not be overturned absent a clear abuse of discretion." *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *State v. Birdshead*, 2015 S.D. 77, ¶ 51, 871 N.W.2d 62, 79 (quoting *Kaberna v. Brown*, 2015 S.D. 34, ¶ 13, 864 N.W.2d 497, 501). "When a [circuit] court misapplies a rule of evidence, as opposed to merely allowing or refusing questionable evidence, it abuses its discretion." *State v. Guthrie*, 2001 S.D. 61, ¶ 30, 627 N.W.2d 401, 415.

[¶14.]     Our rules of evidence state that evidence is relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and it is consequential in determining an action. SDCL 19-19-401. "Once

the evidence is found to be relevant, it is admissible unless it is specifically excluded." *St. John*, 2011 S.D. 58, ¶ 12, 804 N.W.2d at 75 (quoting *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." SDCL 19-19-403 (Rule 403).

[¶15.]       However, our cases make clear that we will not reverse a final judgment solely on the basis of an improvident evidentiary ruling. A different rule would overlook the importance of assessing whether the error caused prejudice that impacted the result. We have expressed this principle in the following terms:

> The *party alleging error* must show prejudicial error. To show such prejudicial error an appellant must establish affirmatively *from the record* that under the evidence the jury might and *probably would have returned a different verdict* if the alleged error had not occurred.

*Supreme Pork*, 2009 S.D. 20, ¶ 58, 764 N.W.2d at 491 (quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 113 (S.D. 1993)). We have synthesized this statement into a "two-step process." *Id.* ¶ 59. First, we "determine whether the trial court abused its discretion in making an evidentiary ruling; and second, [we consider] whether this error was a *prejudicial error* that 'in all probability' affected the jury's conclusion." *Id.*

[¶16.]       As the excerpt above suggests, the trial record plays a critical role in determining the existence of prejudice. A basic tenet of appellate procedure assigns to the appellant "the ultimate responsibility for presenting an adequate record on

appeal . . . ." *Baltodano v. N. Cent. Health Servs., Inc.*, 508 N.W.2d 892, 894 (S.D. 1993) (quoting *Pearson v. Adams*, 279 N.W.2d 674, 676 (S.D. 1979)). Although appellate review in the absence of a transcript is not categorically precluded in all cases, the lack of a transcript may well be fatal to an appeal if it prevents complete and meaningful review of an issue. Our rule, therefore, provides that we will review the trial court record insofar as it exists. *See id.* ("Where the record contains no transcript, the record on appeal is confined to those pleadings and papers transmitted from the circuit court."). Where the trial court record is incomplete and not adequate to the task, "our presumption is that the circuit court acted properly." *Id.* at 895 (quoting *In re C.M.*, 417 N.W.2d 887, 889 (S.D. 1988)).

[¶17.] Here, the existing record is too spare to allow us to review Ben's evidentiary claim relating to the exclusion of the Department of Health surveys. We have the parties' submissions to the circuit court and a transcript of the motion in limine hearing, but these relate only legal arguments—essentially the same ones made by the parties on appeal. We also have the circuit court's one-page order declaring the surveys to be of "limited relevance" and Ben's written offer of proof, drawing comparisons between the use of restraints upon him and deficiencies noted in the surveys. Missing, however, is a transcript from the fifteen-day trial, itself. The transcript would provide us with far more than additional context. It constitutes an essential resource for determining the merits of Ben's evidentiary challenge.

[¶18.]    Even if we were convinced that the circuit court abused its discretion, either in its assessment of the survey's relevance[6] or in its failure to balance its probative force against the considerations listed in Rule 403, we would still be unable to move to the next step of our analysis—"whether this error was a prejudicial error that 'in all probability' affected the jury's conclusion."[7] *Supreme Pork*, 2009 S.D. 20, ¶ 59, 764 N.W.2d at 491. The parties' arguments on appeal illustrate this point.

[¶19.]    Ben claims that the Department of Health surveys were necessary to "show CCHS's knowledge that the use of the prone restraints was impermissible, to show the absence of any claimed mistake as to whether the prone restraints were allowed, and to show it was CCHS's habit and routine in impermissibly using the prone restraint." CCHS has a different view and argues in its brief that the trial transcript would have demonstrated that the admission of the surveys did not

---

6.    Ben submits the surveys were both relevant and admissible as other acts evidence under SDCL 19-19-404(b), or evidence of habit or routine practice under SDCL 19-19-406.

7.    Ben suggests we altered our description of the essential prejudice test in *St. John* when we concluded that, under the facts of the case, "[i]t is possible that the exclusion of the evidence 'in all probability affected the outcome of the jury's verdict and thereby constitutes prejudicial error.'" *St. John*, 2011 S.D. 58, ¶ 18, 804 N.W.2d at 77. It was certainly not our intent to displace the "probability" test with a "possibility of a probability" standard. However, to the extent our statement has created confusion, we reaffirm that the proper test for determining prejudice is whether the error "'in all probability' affected the jury's conclusion." *Supreme Pork*, 2009 S.D. 20, ¶ 59, 764 N.W.2d at 491; *see also Carpenter v. City of Belle Fourche*, 2000 S.D. 55, ¶ 23, 609 N.W.2d 751, 761 (citation omitted) ("Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.").

impact the verdict given the court's rulings and the way the testimony came into evidence:

> The trial transcript would have shown the court gave Plaintiffs free rein to discuss the restraint policies and Plaintiffs focused their case on their allegations of CCHS policy violations. The transcript would have shown that CCHS staff explained to the jury why, in most cases, Ben's safety required that he be restrained even though such restraint might technically violate a policy, and on other occasions why it was impossible to comply with the policy due to Ben's aggressive behaviors.

[¶20.] Without a transcript, we have no effective means of determining which of these partisan arguments better captures the potential impact of the Department of Health surveys. The trial in this case lasted fifteen days. Though we do not know how many witnesses were ultimately called, the parties had listed a combined eighty-two witnesses prior to trial. The clerk's record contains nearly 600 exhibits, including roughly 17,000 pages of Ben's records. It is certainly conceivable that the impact of any error resulting from the exclusion of the surveys was rendered non-prejudicial over the course of the lengthy and involved trial, or perhaps not. Without the ability to read what occurred, we simply do not know.

[¶21.] To a large extent, however, the parties' prejudice arguments are perceptibly unsynchronized and reflect divergent views of the governing legal principles. While CCHS states and applies our rules for assessing prejudice resulting from an erroneous evidentiary ruling, Ben's arguments are trained almost exclusively on his claim that the circuit court incorrectly determined the question of admissibility with little or no analysis of the impact of any error on the jury's verdict.

[¶22.] To the extent he addresses prejudice, Ben does so in the context of a claim that the circuit court's Rule 403 balancing, had it been performed on the record, would have led to admissibility of the surveys because their probative force was not substantially outweighed by the danger of unfair prejudice. *See* SDCL 19-19-403. However, this argument "confuses Rule 403 'prejudicial evidence' with the second step of our review, 'prejudicial error.'" *Supreme Pork*, 2009 S.D. 20, ¶ 60, 764 N.W.2d at 491. Because the complete absence of a trial transcript looms large in this appeal, we assumed at the outset, without deciding, that Ben could satisfy the first of our two-step analysis, bringing into focus the necessity of assessing any *prejudice from the error based upon the entire record*.

[¶23.] Here, the impact of the circuit court's decision to exclude the Department of Health surveys is not self-evident, and we cannot presume prejudice even if the court abused its discretion. Indeed, we specifically rejected a similar notion of "inherent prejudice" in our *Supreme Pork* decision. *See id.* Adopting such a rule, we reasoned, would hold the circuit court to a standard of "absolute perfection" and require a retrial in cases based upon "the error of admission of prejudicial evidence alone" without regard to "a showing of prejudicial effect . . . ." *Id.* We adhere to this precedent now and hold that the failure to provide a trial transcript from this lengthy trial preempts any effort to assess prejudice. The jury's verdict is, therefore, affirmed, making it unnecessary to address CCHS's notice of review issues concerning whether the circuit court erred when it denied CCHS's motion for summary judgment and whether it instructed the jury on the wrong standard of care relating to the use of restraints.

*Taxation of Disbursements*

[¶24.]     We review a circuit court's decision to award or deny disbursements for an abuse of discretion. *McLaren v. Sufficool,* 2015 S.D. 19, ¶ 4, 862 N.W.2d 557, 558. "[D]isbursements are creatures of statute and cannot be allowed in the absence of statutory authority." *DeHaven v. Hall,* 2008 S.D. 57, ¶ 41, 753 N.W.2d 429, 441 (quoting *Elfring v. New Birdsall Co.,* 17 S.D. 350, 351, 96 N.W. 703, 704 (1903)). The provisions of SDCL 15-17-37 authorize "[t]he prevailing party in a civil action or special proceeding" to recover certain "expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial." Authorized disbursements "shall be allowed as of course to the prevailing party unless the court otherwise directs." SDCL 15-6-54(d)(1). As this language somewhat paradoxically suggests, "[t]he court may limit the taxation of disbursements in the interests of justice." SDCL 15-17-52; *see also Harvieux v. Progressive N. Ins. Co.,* 2018 S.D. 52, ¶ 33, 915 N.W.2d 697, 706.

[¶25.]     Both parties assert that the circuit court abused its discretion by taxing partial disbursements against Ben's parents. Ben argues the award of partial disbursements was not in the interest of justice because his parents should not be held personally liable for bringing the case as his guardians and because the circuit court apportioned the disbursements inequitably. CCHS, on the other hand, argues the circuit court should have awarded the full $24,519.63 amount of requested disbursements against Ben's parents because they "were the ones who maintained this cause of action and made all the critical strategy decisions on behalf of Ben."

[¶26.] In our view, neither side has cited persuasive authority on the question of whether a guardian ad litem should be held personally liable for disbursements in relation to a case brought on behalf of a disabled individual, and we are not convinced that the case is well-suited to adopt either of the opposing bright-line rules the parties propose.[8] Therefore, we are not inclined to further examine these polar positions and expand our decisional law, particularly where the circuit court did not base its ruling on Ben's status and, instead, apportioned the disbursements based on the parents' own personal claims.[9]

[¶27.] We will, instead, review the issue under the existing authorities, which contain no categorical exemption from liability for disbursements for guardians ad litem. These authorities also place a premium upon the circuit court's discretion in determining an appropriate award. Furthermore, a precise formula for apportioning an award of disbursements is not proscribed under our statutes or

---

8. Ben cites two unpublished decisions from federal district courts to support his argument: *M.D.B. ex rel. T.M.B. v. Walt Disney Parks & Resorts U.S., Inc.*, No. 6:14-cv-1942, 2017 WL 3065146 (M.D. Fla. July 19, 2017) and *K.C. ex rel. Calaway v. Schucker*, No. 02-2715, 2014 WL 11537828 (W.D. Tenn. Feb. 25, 2014). CCHS cites two additional decisions from federal district courts, one is unpublished and the other was decided in 1913: *Gohl v. Livonia Pub. Sch.*, No. 12-cv-15199, 2018 WL 1128254 (E.D. Mich. Mar. 2, 2018) and *Reynolds v. Great N. Ry. Co.*, 206 F. 1003 (E.D. Wash. 1913). None of the cases discuss the issue in sufficient depth, and only one of the authorities cited, *Walt Disney*, pertained to a guardianship of a disabled person. The other cases involved minors.

9. Moreover, when the dearth of authority on this issue is coupled with the absence of any statutory restriction on the taxation of disbursements regarding a guardian of a disabled person, it suggests this decision may best be left to the Legislature. *See, e.g.*, SDCL 15-17-48 (providing the guardian of an infant is personally liable for disbursements taxed against the infant).

rules, and we can perceive no reason why a trial court should not have the flexibility to apportion an award in its sound discretion to achieve a result which is in the interests of justice. *See, e.g.*, *Klinzing v. Gutterman*, 85 N.W.2d 665, 668 (Minn. 1957) (providing "it would be within the discretion of the trial court . . . to determine the fair proportion of the costs and disbursements to be taxed against [a certain party in a multi-party suit].").[10]

[¶28.]    Though the parties, for different reasons, believe the court's method of apportioning disbursements to be incorrect, we do not believe it was outside the range of permissible choices. Ben's parents did, at one point, claim damages directly and dismissed those claims only after CCHS challenged them. The circuit court was also uniquely situated, particularly given the lack of a complete trial transcript, to assess the role that Ben's parents played in the decision to move forward with the action against CCHS. It appears from the complaint that Ben's claims and his parents' claims were inextricably intertwined, and the circuit court was the only court privy to what transpired during the trial. Under the circumstances, we cannot conclude the circuit court abused its discretion when it apportioned the disbursements.

## Conclusion

[¶29.]    Ben cannot demonstrate that the circuit court's exclusion of the Department of Health surveys in all probability affected the jury's verdict. Even if the circuit court abused its discretion by excluding the Department of Health

---

10.    We see no difference between apportionment of disbursements between parties in a multi-party suit or between parties for multiple claims.

surveys, the lack of a trial transcript prevents our assessment of prejudice.
Further, the circuit court did not abuse its discretion when it apportioned
disbursements against Ben's parents.  We affirm.

[¶30.]      GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY,
Justices, concur.