#29624, #29685-aff in pt & rev in pt-PJD
**2022 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES W. FARMER,                          Plaintiff and Appellant,

    v.

LORI A. FARMER,                           Defendant and Appellee.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
FIRST WESTERN FEDERAL
SAVINGS BANK,                             Plaintiff,

    v.

LAKOTA LAKE CAMP, LLC and
JAMES W. FARMER,                          Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE HEIDI LINNGREN (#29624)
THE HONORABLE JANE WIPF PFEIFLE (#29685)
Judges

\* \* \* \*

JAY C. SHULTZ
Rapid City, South Dakota                  Attorney for appellants James
                                            W. Farmer and Lakota Lake
                                            Camp, LLC.

PATRICIA A. MEYERS
Rapid City, South Dakota                  Attorney for appellee Lori A.
                                            Farmer.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 10, 2022
OPINION FILED **08/10/22**

DEVANEY, Justice

[¶1.] In this consolidated appeal, James Farmer challenges orders entered by two different circuit court judges related to his distributional interest in Lakota Lake Camp, LLC. James and Lakota Lake also challenge orders related to the release of funds to James's wife, Lori Lieberman, previously held by the clerk of courts following an execution sale of property owned by Lakota Lake. We affirm in part, reverse in part, and remand for further proceedings.

## Factual and Procedural Background

[¶2.] During their marriage, James and Lori acquired a significant amount of land in the Black Hills and formed multiple legal entities for the development and sale of the land. In 2014, James and Lori obtained a divorce, and the judgment and decree of divorce incorporated the parties' property settlement agreement (Agreement). The Agreement addressed, among other matters, the division, management, and sale of the properties owned by their companies.

[¶3.] In July 2016, Lori filed the first of many motions with the circuit court (divorce court) seeking to compel James's compliance with the judgment and decree of divorce. For example, she alleged that James failed to pay their joint debts with proceeds of land sales, improperly diluted her membership interest in their company Lakota Lake, exceeded the limits under the Agreement that he could spend on expenses, overpaid his management fees, and denied her access to the companies' financial records. After an evidentiary hearing in October 2016, the divorce court found James in contempt and compelled his compliance with the judgment and decree of divorce. However, James continued to refuse to comply

with the terms of the parties' Agreement and further refused to comply with the directives as stated in the court's order. James and Lori returned to court frequently for hearings related to James's actions or inactions.

[¶4.]     Ultimately, in January 2018, the divorce court held an evidentiary hearing to address James's contempt and the remaining division of the parties' property. In April 2018, the court issued findings of fact and conclusions of law, and after considering objections and proposals by the parties, the court issued amended findings and conclusions in July 2018. The court valued the parties' remaining real estate equity at $870,150 and divided it equally, resulting in $435,075 being allocated to each party.

[¶5.]     However, the court noted that James had refused to pay amounts owed to Lori for items such as unauthorized travel expenses, overpayment of fees to himself, and Lori's share of the proceeds from the sale of certain real estate. The court found that James's refusal to pay the amounts owed was willful and contumacious and continued to constitute contempt of the court's orders. The court identified that in total James owed Lori $331,184.81 for his contemptuous acts, and the court awarded Lori that amount. The court determined that for James "[t]o purge himself of contempt the [c]ourt will allow the satisfaction of the judgment by a division of the remaining properties so that [Lori] is awarded property" reflecting her share of $435,075 plus $331,184.81, for a total of $766,259.81. In particular, the court awarded Lori a property owned by Lakota Lake named Big Granite, property the parties referred to as the "cabin property," and other parcels. To account for what was left of James's equal share of the property division after subtracting the

$331,184.81 he owed to Lori, the court awarded James the value of the other property owned by Lakota Lake named Granite Perch, the property at issue in this appeal.

[¶6.]    In August 2018, the divorce court entered a separate judgment in favor of Lori for $331,184.81 and ordered James to satisfy this contempt judgment by transferring to Lori the real estate interests identified in its findings and conclusions.  In particular, the court directed James, in his capacity as managing member of Lakota Lake, to convey title of Big Granite to himself; "make distributions of cash or property to the other members of Lakota as may be necessary to comply with the distribution obligations of Lakota as set forth in Lakota's operating agreement or as otherwise required by law"; and then "execute and deliver a warranty deed transferring the ownership of Big Granite Property to [Lori] . . . free and clear of any rights, encumbrances or restrictions."

[¶7.]    James appealed the circuit court's contempt order and one of his arguments was that the circuit court "erred in conveying title to the real property because the legal entities holding title to those assets are indispensable parties who were not joined in this action, and thus, the court had no authority to require a non-party legal entity to transfer Big Granite (albeit indirectly) to *Lori*."  *Farmer v. Farmer*, 2020 S.D. 46, ¶ 46, 948 N.W.2d 29, 42.  He also asserted that the circuit court's order directing him to transfer Lakota Lake property impermissibly modified the parties' property settlement agreement.  *Id.* ¶ 49.

[¶8.]    This Court rejected James's first argument because the circuit court did not order *Lakota Lake* to transfer real property; it ordered *James* to transfer Big

Granite to himself in his capacity as managing member of Lakota Lake and then ordered *James*, personally, to transfer title to Lori. We noted that "James does not assert that he was without authority under Lakota Lake's operating agreement to take the specific actions ordered by the court." *Id.* ¶ 46.

[¶9.]     In regard to James's second argument, this Court noted that "it is clear under Lakota Lake's operating agreement that James, as the managing member, has the exclusive authority to dispose of company assets and thus convey Big Granite to whomever he chooses so long as he makes other necessary distributions to the rest of the Lakota Lake members." *Id.* ¶ 47. Therefore, we concluded that although the circuit court "modified the method of distribution of this marital property, the court did not modify the equal division of the property required by the Agreement." *Id.* ¶ 49. We observed that "the record reflects that modifying the method of distribution was necessary in this case to prevent James from further dissipating the value of Lori's interest in the Lakota Lake property in a manner that benefited only James." *Id.* Ultimately, this Court affirmed the circuit court's contempt decision and awarded Lori an additional $29,172.62 in appellate attorney fees. *Id.* ¶¶ 54, 58, 948 N.W.2d at 44–45.

[¶10.]     While James's appeal was pending, First Western Bank instituted a lawsuit against Lakota Lake and James, requesting a judgment of $40,757.15, plus attorney fees and costs, after Lakota Lake defaulted on a note personally guaranteed by James. The circuit court (collection court) granted First Western's motion for summary judgment in December 2018 and awarded First Western a judgment against Lakota Lake and James for $44,603.93, which included costs and

attorney fees. In May 2019, after Lori learned of First Western's judgment, she paid the bank $50,000 for an assignment of its judgment against Lakota Lake and James. She claimed that she did so because First Western's judgment attached to properties she owned personally—Big Granite and the cabin property—and she wanted to avoid an execution sale on the cabin by First Western.[1]

[¶11.] As First Western's assignee, Lori executed on the judgment against Lakota Lake and James, and the Pennington County Sheriff's Office held an execution sale for Granite Perch, the last remaining property owned by Lakota Lake, on February 17, 2020. Granite Perch sold for $92,000, and after satisfaction of the judgment related to the debt owed to First Western and later assigned to Lori, as well as costs and fees, the Sheriff's Office deposited $38,652.46 in excess proceeds with the Pennington County Clerk of Courts.

[¶12.] On February 19, 2020, Lori, "individually and as a member of Lakota Lake[,]" filed an application with the collection court for a charging order against James's distributional interest in Lakota Lake. She noted that she had obtained an assignment of First Western's judgment against Lakota Lake and James and further noted that she had individually obtained three separate judgments against James in their divorce action. Lori filed documentation showing these debts and requested that the collection court enter a charging order attaching a lien to James's distributional interest in Lakota Lake. Lori also requested that the court direct the clerk of courts to release the excess sale proceeds from the execution sale

---

1. In his brief on appeal, James disputes Lori's claim that the judgment attached to the cabin property. However, he did not dispute or mention whether the judgment attached to Big Granite.

to her. James filed a brief in opposition, claiming that the collection court was without jurisdiction and authority to charge James's distributional interest in Lakota Lake. He also asserted that the excess sale proceeds belong to Lakota Lake.

[¶13.] The record reflects that the collection court held a hearing on Lori's application. There is no transcript of this hearing in the record. On May 12, 2020, the collection court granted Lori "a continuing lien against Defendant James Farmer's distributional share." The court further ordered that the excess sale proceeds "will remain with the [c]ourt until such time as the divorce court makes a determination as to Defendant James Farmer's distributional interest."

[¶14.] On August 12, 2020, this Court issued its decision in the appeal of the contempt decision issued in the divorce proceeding. *See Farmer*, 2020 S.D. 46, 948 N.W.2d 29. Lori then filed a motion in the divorce file on November 23, 2020, requesting that the divorce court issue an order releasing the excess sale proceeds held by the Pennington County Clerk of Courts to her. Lori informed the divorce court that the collection court had issued an order leaving the excess sale proceeds with the clerk of courts "until the South Dakota Supreme Court Appeal was completed and further providing that the divorce court would determine the appropriate disposition of the remaining funds." In her affidavit in support of her motion, Lori alleged, without citing any record evidence or attaching supporting documentation, that "[t]o the best of [her] information and belief Lakota Lake Camp, LLC has been administratively dissolved."[2] Lori requested that "any

---

2. In an additional filing, Lori claimed, without citation to the record or supporting documentation, that James failed to "keep Lakota Lake current
(continued . . .)

remaining funds, that James may be entitled to, be paid to [her] and that they be applied to the monies owed to [her] by James."

[¶15.] James filed a brief in opposition, asserting that the collection court's order did not "authorize or empower" the *divorce court* to determine how the excess sale proceeds should be applied. He also asserted that Lori has no right to levy on or obtain the excess sale proceeds through her motion for a release of funds because Lakota Lake is the owner of those funds, not James, and any distribution of those funds by Lakota Lake would be governed by the company's operating agreement.

[¶16.] Lori's reply brief contained a request that the divorce court determine James's distributional interest. She then proposed a specific calculation and asserted that the divorce court could, as part of its contempt powers, issue an order directing James, in his capacity as managing member of Lakota Lake, to make a distribution of the excess proceeds from the sale of Granite Perch and any checking account funds to himself, Lori, and the remaining members. She further claimed that the court could direct that James turn over his distributional interest to Lori. Of note, however, Lori's reply brief made no mention of the divorce court's specific findings and directives in its prior contempt ruling wherein the value of Granite Perch was awarded to James.

[¶17.] After holding a hearing on January 19, 2021, of which there is no transcript in the record, the divorce court issued a letter decision on March 8, 2021. The court noted that the collection court had granted Lori's application for a

---

(. . . continued)
with the [S]ecretary of [S]tate and, as a result, Lakota Lake was administratively dissolved."

charging order and ordered that the excess sale proceeds be held by the clerk of courts until the divorce court made a determination as to James's distributional interest. However, instead of determining James's current distributional interest in Lakota Lake, the divorce court referred to its prior contempt decision modifying the method of distribution of the parties' property. In particular, the court referred to the process whereby it had ordered James, as managing member of Lakota Lake, to transfer property owned by Lakota Lake to himself and then to Lori. The court concluded in regard to Lori's current request "that it would not be improper to release the funds being held to [Lori] pursuant to its previously ordered distribution." The court further noted that "releasing the funds is within [its] discretion to enforce the underlying objectives of the parties' property settlement as set forth in the Agreement" and that "the release is proper to satisfy the [c]ourt's order that has since been affirmed by the South Dakota Supreme Court." The divorce court then granted Lori's motion for release of funds and issued an order directing that the funds held by the Pennington County Clerk of Courts as part of the collection action be released to Lori "in further satisfaction of the funds owed by [James] to [Lori]."

[¶18.] On April 23, 2021, James filed his notice of appeal of the divorce court's order. On the same day, he filed a motion with the collection court to dismiss Lori's application for a charging order—the application the collection court had previously granted. James claimed that the collection court did not have jurisdiction to consider or grant the application because Lori, who was never a party

to the underlying suit initiated by First Western, lacked standing to file the application.

[¶19.] Also on April 23, 2021, Lakota Lake, via the same counsel representing James, filed a motion with the collection court requesting an order releasing the excess sale proceeds to Lakota Lake. It claimed that the collection court's order granting Lori's application for a charging order "acknowledged that the excess funds belong to the judgment debtor, Lakota Lake Camp LLC." It further asserted that the collection court was required to release the funds to Lakota Lake because its debt with First Western had been satisfied by the sale and no outstanding executions existed against Lakota Lake.

[¶20.] In her reply, Lori noted that contrary to James's characterization, she did not file her application for a charging order only in her capacity as an assignee of First Western. She noted that she also filed the application in her individual capacity in light of the three judgments she had personally obtained against James in the divorce action. Lori further asserted that she was not required to intervene as a party in the collection action to obtain a charging order. Finally, she argued that because "the sole asset owned by Lakota Lake would be the excess funds from the sale of its remaining asset[,]" the collection court properly "requested that the divorce court determine James' distributional interest in Lakota Lake and granted Lori a continuing lien on James' interest." She therefore requested that the court deny James's and Lakota Lake's motions.

[¶21.] James and Lakota Lake filed a joint reply, directing the collection court to the language in SDCL 47-34A-504(a). They noted that the statute refers to

the filing of an application for a charging order with "a court having jurisdiction[,]" *see id.*, and then asserted that because Lori obtained her status as a judgment creditor from the divorce court, she was required to file her application for a charging order with that court, not the collection court.

[¶22.] The collection court held a hearing on June 3, 2021, and at the conclusion of the hearing, the court issued an oral ruling denying James's motion. The court found that it had jurisdiction to consider Lori's application for a charging order and alternatively determined that, if necessary, it would treat Lori's application as a constructive motion to intervene based on the factors relevant to intervention. The collection court also denied Lakota Lake's motion for the release of the excess sale proceeds, concluding that "it is appropriate that those funds go to Lori[.]" The collection court entered a written order dismissing both motions on June 8, 2021, and on June 14, James appealed this order.

[¶23.] The issues asserted by James and Lakota Lake in the appeals from the divorce court and collection court decisions are consolidated and restated as follows:[3]

> 1. Whether the collection court could hear and determine Lori's application for a charging order.
>
> 2. Whether the divorce court erred in ordering the release of the excess sale proceeds to Lori.
>
> 3. Whether the collection court erred in denying Lakota Lake's motion to release to the company the excess proceeds from the sale of Granite Perch.

---

3. For ease of reading, James and Lakota Lake will collectively be referred to as James unless it is necessary to distinguish between the two.

**Analysis and Decision**

### 1. Whether the collection court could hear and determine Lori's application for a charging order.

[¶24.]     James notes that the judgments Lori seeks to satisfy via her application for a charging order and the corresponding lien on James's distributional interest in Lakota Lake are outside the subject matter addressed in First Western's lawsuit against James and Lakota Lake. He further notes that beyond her standing to collect the judgment owed to First Western as its assignee, Lori was never a party to the underlying lawsuit (or the ancillary collection proceedings) in her own right. In his view, therefore, after the execution sale satisfied First Western's judgment in full (and likewise James's secondary liability as a personal guarantor), Lori, as First Western's assignee, had no further standing (based on her unsatisfied executions against James in the separate *divorce action*) as a judgment creditor in the collection action. He then reasons that because Lori did not have standing, the *collection court* did not have subject matter jurisdiction to hear and determine her application for a charging order.

[¶25.]     "A challenge to the subject matter jurisdiction of a court is a question of law that we review de novo." *Estate of Ducheneaux v. Ducheneaux*, 2015 S.D. 11, ¶ 7, 861 N.W.2d 519, 521. Similarly, "[w]hether a party has standing to maintain an action is a question of law reviewable by this Court de novo." *Arnoldy v. Mahoney*, 2010 S.D. 89, ¶ 12, 791 N.W.2d 645, 652. Under SDCL 47-34A-504, "[o]n application by a judgment creditor of a member of a limited liability company or of a member's transferee, and following notice to the limited liability company of such

application, *a court having jurisdiction* may charge the distributional interest of the judgment debtor to satisfy the judgment."[4] (Emphasis added.)

[¶26.]        Here, Lori filed her application with the collection court, not just as an assignee of First Western's judgment against Lakota Lake and James (both of whom were judgment debtors in the collection action), but also as a judgment creditor of James (a member of Lakota Lake) against whom Lori, personally, had three outstanding judgments entered in the divorce proceeding. It is undisputed that both Lakota Lake and James were parties to the collection action and had notice of Lori's application filed with the collection court. Thus, the question is whether, after the extinguishment of the underlying debt to First Western, Lori must have party status in the collection action in her own right (as opposed to her participation as an assignee of First Western's debt) in order to invoke the court's statutory authority to grant her a charging order pertaining to unsatisfied executions from a separate proceeding.

[¶27.]        James does not cite statutory authority or case law to support his contention that Lori needed to be a named party to the civil lawsuit initiated by First Western in order to file an application for a charging order during the ancillary collection proceedings associated with First Western's suit. Notably, the language in SDCL 47-34A-504 does not state or imply that a *judgment creditor*

---

4.    Although James characterizes his argument as a challenge to the collection court's subject matter jurisdiction, he does not appear to dispute that all circuit courts within this State have subject matter jurisdiction under SDCL 47-34A-504 to determine applications for charging orders by judgment creditors. *See* S.D. Const. art. V, § 5 (providing that "circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature").

must be a party to the pending suit in which the creditor's application for a charging order is filed. A review of decisions from other courts addressing this issue supports that a judgment creditor need not have party status to seek a charging order.

[¶28.]    For example, in a case from a Texas court of appeals, the Office of the Attorney General, Child Support Division (AGO) filed an application for a charging order against Christopher Spates's distributional interest in a limited liability company (LLC) in a lawsuit filed by the LLC against a third party for breach of contract and tortious interference with a contract. *See Spates v. Office of Att'y Gen., Child Support Div.*, 485 S.W.3d 546, 549 (Tex. App. 2016).[5] Ultimately, the LLC settled its lawsuit against the third party, and the proceeds of the settlement were released to the LLC.[6] Thereafter, the same court that had approved the settlement in the underlying suit and ordered the release of funds to the LLC granted the

---

5.  Although the caption of the appeal suggests the action is between Spates and the AGO, it is undisputed that the AGO filed its application for and obtained its charging order in the underlying action between the LLC and third party. That underlying action was captioned: "*Prodigy Services LLC [v]. ENI Operating Co., Inc.*, Cause No. 201235849[.]"

6.  Similar to Lori's application here, the AGO in *Spates* had requested that the trial court release the proceeds directly to the creditor (the AGO's Child Support Division), not the LLC. Before the trial court ruled on the AGO's request, the LLC filed a writ of mandamus, arguing in part that the trial court was required to disburse the settlement proceeds to the LLC. In the writ proceeding, *In re Prodigy Services, LLC*, a Texas court determined that although the trial court could charge Spates's membership interest in the LLC, it could not "foreclos[e] on any future charging order it may obtain" and could not force the LLC "to make distributions to its members[.]" No. 14-14-00248 CV, 2014 WL 2936928 (Tex. App. June 6, 2014). The appeals court therefore held that the AGO would "have to wait for [the LLC] to make such distributions before it can attempt to satisfy the child support judgment against Spates." *Spates*, 485 S.W.3d at 549.

AGO's application (as a judgment creditor of a member of the LLC) for a charging order against the member's distributional interest in the company.

[¶29.] On appeal, the LLC asserted a claim similar to the one James asserts here. The LLC claimed that because the AGO had obtained its judgments in a separate proceeding before different courts, "only those courts and not the [current court], had jurisdiction to grant the [AGO's] request for a charging order." *Id.* at 554. The Texas court quoted its charging order statute, which is nearly identical to SDCL 47-34A-504, and noted that it "does not *specify* any jurisdictional requirements for filing an application for a charging order."[7] *Id.* at 555 (emphasis added). The court then explained that "[i]n the usual case, a judgment [creditor] would seek a charging order in the same court in which the underlying judgment was obtained, either during the original suit or in a subsequent ancillary proceeding. It is conceivable, however, that in certain circumstances, the judgment creditor may find it expedient or necessary to file the application for a charging order in another court that has jurisdiction over the limited liability company of which the judgment debtor is a member, especially if the judgment debtor lacks other assets or has taken affirmative actions to avoid the creditor's collection efforts." *Id.* The court therefore concluded that the trial court had subject matter jurisdiction to hear and determine the judgment creditor's application for a charging order against the member's distributional interest.

---

7. The court quoted the Texas statute as follows: "[o]n application by a judgment creditor of a member of a limited liability company . . . a court having jurisdiction may charge the membership interest of the judgment debtor to satisfy the judgment." *See id.* (quoting Tex. Bus. Orgs. Code § 101.112(a)).

-14-

[¶30.] Here, it is undisputed that the collection court had subject matter jurisdiction over the disposition of the excess sale proceeds. The court also had personal jurisdiction over James and Lakota Lake, both parties to the underlying lawsuit, at the time Lori filed her application seeking a charging order and the release of the excess sale proceeds.[8] Moreover, the statutes governing collection proceedings following an execution sale further support that the collection court had subject matter jurisdiction here. These statutes, like the charging order statutes, do not state or imply that only named parties in the collection suit giving rise to an execution sale may assert a right to the excess proceeds, as Lori did here. In fact, they state just the opposite. Under SDCL 15-18-39, "[i]f there be any surplus and if the officer has *other unsatisfied executions* against the debtor, he may apply such surplus towards satisfaction of the same in the order of their respective priorities and account for any final surplus as provided in § 15-18-40." (Emphasis added.) Further, under SDCL 15-19-35, "[e]very officer or person who conducts an execution sale shall apply the proceeds of such sale: . . . (3) To the satisfaction of *any other execution* in the officer's or person's hands, to which such proceeds may be lawfully applied;" and "(4) To pay the surplus, if any, to the defendant, or into court for the use of the defendant *or the person entitled thereto*, subject to the order of the court." (Emphasis added.)

---

8. We have not been asked on appeal to decide whether personal jurisdiction must exist over both the judgment debtor and limited liability company or one in particular. *See, e.g.*, 1 Ribstein and Keatinge on Ltd. Liab. Cos. § 10:2 (observing that the nature of personal jurisdiction required varies). Because it is undisputed that the collection court had personal jurisdiction over both James and Lakota Lake, we leave the resolution to that question for another day.

[¶31.]     We conclude that the collection court could, under SDCL 47-34A-504 and SDCL chapters 15-18 and 15-19, consider and grant Lori's application as a judgment creditor of James for a charging order against James's distributional interest in the Lakota Lake funds.

### 2.     *Whether the divorce court erred in ordering the release of the excess sale proceeds to Lori.*

[¶32.]     James asserts that the divorce court had no authority to order the release of the excess sale proceeds because the *collection court* did not authorize the *divorce court* to determine how and to whom the excess sale proceeds held by the Pennington County Clerk of Courts in a separate civil case file should be applied. In his view, the collection court had the sole authority to apply the excess proceeds based on the laws governing execution sales. He further claims that the divorce court erred in ordering the release of the excess sale proceeds to Lori because the proceeds belong to Lakota Lake, not James; and Lori, as a judgment creditor of James's distributional interest in Lakota Lake, could not levy upon or seize property belonging to Lakota Lake.[9] He contends that Lori's remedies were limited to those available to judgment creditors under SDCL 47-34A-504.

---

9.     According to James, the divorce court erred in not joining Lakota Lake as an indispensable party "given the final outcome of the circuit court's action" allowing Lori to seize the excess sale proceeds belonging to Lakota Lake. The divorce court's letter decision with respect to the motion for release of funds does not indicate that James asked the court to join Lakota Lake as an indispensable party. As this Court has often said, it is the appellant's duty to present an adequate record on appeal, and a "lack of a transcript may well be fatal to an appeal if it prevents complete and meaningful review of an issue." *See, e.g.*, *Graff v. Children's Care Hosp. & Sch.*, 2020 S.D. 26, ¶ 16, 943 N.W.2d 484, 489 (citation omitted). Because the record before this Court does

(continued . . .)

[¶33.]        In response, Lori does not address whether her remedies as a judgment

creditor of James's distributional interest are limited to those stated in SDCL 47-

34A-504.  She also does not respond to James's argument that the divorce court

could not order the release of funds held pursuant to an order by a different circuit

court judge in a different civil action.  Lori instead offers a conclusory argument

based on an inferential reading of the divorce court's letter opinion.  She asserts

that "the divorce court's order releasing the funds to Lori was valid and enforceable"

because the "court had the authority under its powers of contempt to compel James

as the managing member of Lakota Lake to make a distribution of the remaining

proceeds to James, who in turn was required to turn them over to Lori."

[¶34.]        Whether the divorce court had authority to order the release of the

excess sale proceeds requires an interpretation and application of statutory

provisions.  "Questions of statutory interpretation and application are reviewed

under the de novo standard of review with no deference to the circuit court's

decision." *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 10, 907 N.W.2d 795,

798 (citation omitted).

[¶35.]        It is unclear from the language of the divorce court's letter decision on

what factual or legal basis it ordered the release of all the excess sale proceeds to

Lori.  The divorce court declared, without entering any orders modifying its prior

contempt order or directing that James take any action with respect to the excess

proceeds from the sale of Granite Perch, that releasing the excess sale proceeds "is

_____

(. . . continued)
        not reflect that James raised this issue before the divorce court, we decline to
        address it on appeal.

proper to satisfy the [c]ourt's order that has since been affirmed by the South Dakota Supreme Court." *Cf. Farmer*, 2020 S.D. 46, ¶ 27, 948 N.W.2d at 37 ("as a general rule, courts retain jurisdiction to make such further orders as are appropriate to compel compliance with its judgment"). In so ruling, the court also indicated that "[t]his property transfer is no different" than what had been ordered in the prior divorce proceeding. On the contrary, the court's order releasing the proceeds of the sale of Granite Perch to Lori is unlike the specific directives in the court's prior contempt order and amended findings and conclusions relating to Big Granite, the other Lakota Lake property.

[¶36.] Moreover, in the prior order, the court "awarded" Granite Perch to James "free and clear without any further cash disbursements made to Lori" and directed that Lori "shall not prevent or seek any interest in the Granite Perch Property if [James] causes the distribution of [the] Granite Perch Property to himself in accordance with applicable law."[10] Importantly, the divorce court's current letter decision does not identify any evidence that James, as managing member of Lakota Lake, ever caused the distribution of Granite Perch to himself in accord with applicable law. Rather, it appears from James's and Lori's written submissions to the collection court that Lakota Lake held title to Granite Perch when it was sold at the execution sale.

[¶37.] Lori's motion for release of these funds filed with the divorce court refers solely to her status as a judgment creditor of James with a continuing lien on

---

10. A more accurate characterization would be that the court awarded James the *value* of Granite Perch.

James's distributional interest in Lakota Lake as a result of the collection court granting her application for a charging order. Therefore, her rights and remedies before the divorce court were governed by SDCL 47-34A-504, which provides, in relevant part:

> (a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, and following notice to the limited liability company of such application, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment.
>
> (b) A charging order constitutes a lien on the judgment debtor's distributional interest.
>
> (c) A distributional interest in a limited liability company which is charged may be redeemed:
>
>> (1) By the judgment debtor;
>> (2) With property other than the company's property, by one or more of the other members; or
>> (3) With the company's property, but only if permitted by the operating agreement.
>
> . . .
>
> (e) This section provides the exclusive remedy that a judgment creditor of a member's distributional interest or a member's assignee may use to satisfy a judgment out of the judgment debtor's interest in a limited liability company. No other remedy, including foreclosure on the member's distributional interest or a court order for directions, accounts, and inquiries that the debtor, member might have made, is available to the judgment creditor attempting to satisfy the judgment out of the judgment debtor's interest in the limited liability company.
>
> (f) No creditor of a member or a member's assignee has any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the company.
> . . . .

[¶38.] In *Mahalo Investments III, LLC v. First Citizens Bank & Trust Co., Inc.*, the Court of Appeal of Georgia aptly explained the scope of a charging order. 769 S.E.2d 154, 158 (Ga. Ct. App. 2015).

> We glean from these provisions that the charging order is a mechanism by which a judgment creditor can attach a member's limited liability company interest to satisfy an unpaid judgment, but that the charging order does not permit the judgment creditor to replace the member or otherwise interfere in the governance of the limited liability company. Moreover, it is the judgment debtor's right to possession of distributions in the future that is essentially being levied or charged. Thus, from the limited liability company's standpoint, it is business as usual except that any distributions to the member subject to the charging order are diverted to the judgment creditor.

*Id.* Secondary sources have also explained charging orders. *See, e.g.*, 51 Am. Jur. 2d Limited Liability Companies § 23; Mark Sargent and Walter Scheidetzky, Limited Liability Company Handbook § 3:104; 1 Ribstein and Keatinge on Ltd. Liab. Cos. § 10:2. The purpose of a charging order is to provide "a special remedy that enables the judgment creditor to realize the value of the judgment debtor-member's distributional interest, while at the same time protecting both the LLC's ability to continue to operate and the interests of the other members." 51 Am. Jur. 2d Limited Liability Companies § 23.

[¶39.] The charging order becomes a lien on the member's distributional interest and "requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor." *Id.*; *accord* 1 Ribstein and Keatinge on Ltd. Liab. Cos. § 10:2 ("The charging order is a remedy provided to the judgment-creditor of a member or assignee by which the distributions (interim and liquidating) made to a

member or assignee are attached and diverted to the judgment-creditor in satisfaction of the judgment."). As one secondary source explained, although the creditor has a lien on the member's share of distributions, "[i]n many states a receiver may be appointed to safeguard the creditor's interest." *See* Mark Sargent and Walter Scheidetzky, Limited Liability Company Handbook § 3:104.

[¶40.] Assuming Lakota Lake held title to Granite Perch at the time of the execution sale, the divorce court could not, under SDCL 47-34A-504, order the release of the excess sale proceeds—Lakota Lake's property—to James's judgment creditor, Lori. The divorce court therefore erred when it granted Lori's motion, and we reverse the court's order releasing the funds held by the collection court to her.

### 3. Whether the collection court erred in denying Lakota Lake's motion to release to the company the excess proceeds from the sale of Granite Perch.

[¶41.] Connected to James's claim that the *divorce court* was without authority to order the release of the excess sale proceeds from the sale of Granite Perch to Lori, Lakota Lake (represented by James's counsel) asserts that the *collection court* erred in denying its motion to release the excess sale proceeds to the company. Lakota Lake contends that it is undisputed that it was the record owner of Granite Perch at the time of the execution sale. It then contends that once First Western's judgment lien was satisfied in full, James's liability as a guarantor "was extinguished" and First Western (or Lori as its assignee) was no longer a judgment creditor of Lakota Lake. In its view, under SDCL 15-18-40 and SDCL 15-19-35, the collection court was required to release the funds to Lakota Lake.

[¶42.] There is no dispute that in accord with SDCL 15-18-38, the sheriff paid to Lori, as First Western's assignee, the funds sufficient to satisfy the execution of the judgment obtained by First Western. Under SDCL 15-18-39, "[i]f there be any surplus and if the officer has other unsatisfied executions against the debtor, he may apply such surplus towards satisfaction of the same in the order of their respective priorities and account for any final surplus as provided in § 15-18-40." The record does not indicate that any unsatisfied executions existed against Lakota Lake. But Lori did file as attachments to her application for a charging order the unsatisfied executions against James in the divorce proceeding, and at the time of the execution sale, James was a judgment debtor in the collection action along with Lakota Lake. Also, James's interest in, and ability to access, the proceeds from the sale of property presumably owned by Lakota Lake would not have been apparent to the sheriff in determining how or whether to apply the excess proceeds to the judgments against James.

[¶43.] SDCL 15-18-40 provides that "[i]f there be any surplus, and the officer has no other executions against the debtor, the officer shall forthwith deposit it in the court from which the execution issued and notify the execution debtor by registered or certified mail at his last known post office address of such deposit, and make report thereof in his return of the execution." Here, the sheriff properly deposited the surplus with the collection court—the court from which the execution issued—and notified both James and Lakota Lake.

[¶44.] Similar statutory language is contained in SDCL 15-19-35 governing execution sales. That statute provides:

> Every officer or person who conducts an execution sale shall apply the proceeds of such sale:
>> (1) To the payment of the costs and expenses of the sale, including any actual out-of-pocket expenses and reasonable costs incurred by a sheriff;
>> (2) To the satisfaction of the execution under which the sale is made;
>> (3) *To the satisfaction of any other execution in the officer's or person's hands, to which such proceeds may be lawfully applied*;
>> (4) To pay the surplus, if any, to the defendant, or into court for the use of the defendant *or the person entitled thereto*, subject to the order of the court.  If such surplus or any part thereof remains in the court for the term of three months without being applied for, the court may direct the same to be put out at interest for the benefit of the defendant, the defendant's representatives, or assigns, subject to the order of the court.

*Id.* (emphasis added).

[¶45.]     Given the circumstances here, the sheriff took all four steps, and on the fourth step, paid the surplus into the court.  The day after the execution sale, Lori filed her application with the collection court for a charging order and requested that the collection court release to her the excess sale proceeds.  While James and Lakota Lake filed an objection to Lori's request, neither requested that the court release the excess sale proceeds to Lakota Lake.  But even if they had made such a request, the collection court could not have simply ordered the release of the excess proceeds (presumably Lakota Lake's property) to Lori via granting Lori's application for a charging order on *James's distributional interest* in Lakota Lake.  As previously explained, Lori's lien only attaches to James's (an LLC member's) distributional interest in these proceeds, and the charging order alone does not give an issuing court (here, the collection court) authority to dictate when a

limited liability company makes distributions to its members.[11]  The company's operating agreement would control, and there may be other members of Lakota Lake who retain a membership interest, albeit small, that must be accounted for.[12]

[¶46.]     However, contrary to Lakota Lake's claim, the circuit court was not required to release the funds to Lakota Lake simply because First Western's judgment lien against James was satisfied in full.  Under SDCL 15-19-35(4), the collection court could retain the funds subject to a determination of who is entitled to them.  This is presumably what the collection court attempted to do by including

11.    As Sargent and Scheidtzky explained, that some courts do not strictly follow the rules governing charging orders (i.e., that such is a judgment creditor's exclusive remedy) because such rules lead to an injustice when, for example, the limited liability company is in reality the member.  *See* Limited Liability Company Handbook § 3:104.  The reason for making a charging order the exclusive remedy is to protect the other members of the company from being forced into an involuntary relationship with a creditor.  However, when the company is really the alter ego of the debtor and the debtor is using the company to avoid paying on a judgment, the legal separation of the company and debtor can, depending on the circumstances, be disregarded.  *See Curci Invest., LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 850–51 (Cal. Ct. App. 2017).  Notably, however, the California statute at issue in *Baldwin* is not the same as SDCL 47-34A-504.  The court in California reasoned that under its statute, the judgment creditor with a charging order has available the equitable remedy of reverse veil piercing, in which the debt of an individual is satisfied through the assets of an entity of which the individual is an insider.  *See id.* at 852–54.

12.    Lori acknowledged in her brief to the collection court, in opposition to Lakota Lake's motion for release of the excess proceeds, that the divorce court had in the prior contempt proceeding "determined that James would be the sole owner of Lakota Lake's remaining asset Granite Perch."  She then asserted that "James simply never made the distribution of this asset to himself" and that he is now "pretending that Lakota Lake is the owner of the remaining asset, knowing that the trial court has determined otherwise."  Because there is no transcript of the related hearing before the divorce court, whether these topics were addressed or resolved by the divorce court cannot be ascertained from the record.

in its order granting Lori's application a directive that the excess sale proceeds "will remain with the [c]ourt until such time as the divorce court makes a determination as to Defendant James Farmer's distributional interest." But the record does not contain a transcript of the initial hearing on Lori's application. It is therefore unclear whether the collection court and parties discussed who owns the excess sale proceeds in light of Lakota Lake's existing membership interests and the divorce court's directives in its prior amended findings and conclusions and contempt judgment.

[¶47.]     Nevertheless, we need not decide at this juncture whether the collection court erred in denying Lakota Lake's motion for release of funds because at the time Lakota Lake filed the motion with the *collection court*, the *divorce court* had already ordered that the funds be released to Lori. Having now concluded that the divorce court erred in ordering the release of the funds, the proper disposition of the excess sale proceeds remains to be determined.[13] We therefore vacate the collection court's order denying Lakota Lake's motion and remand for further proceedings before the collection court related to the proper disposition of the funds at issue.

---

13.     A court determining the proper disposition of proceeds may consider SDCL chapter 15-20, which governs proceeds supplementary to an execution. Under SDCL 15-20-14, the circuit court may appoint a receiver of the property of the judgment debtor in the same manner as if the appointment was made in accord with the rules governing receiverships under chapter 21-21. Pursuant to SDCL 21-21-1, "[a] receiver may be appointed by the court in which an action is pending, or by the judge thereof, on the application of the plaintiff or of any party whose right to or interest in the property, funds, or proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured . . . ."

[¶48.] Affirmed in part, reversed in part, and remanded.

[¶49.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.